[Criminal No. 882.   Filed January 8, 1940.]

[97 Pac. (2d) 736.]

HAROLD KEYS, Appellant, v. THE STATE OF ARIZONA, Respondent.

Mr. Wm. J. Fellows, for Appellant.

Mr. Joe Conway, Attorney General, and Mr. Albert M. Garcia, Assistant Attorney General, for Respondent.

LOCKWOOD, J.—Harold Keys, hereinafter called defendant, was convicted of the crime of robbery and

sentenced to serve not less than twenty nor more than twenty-five years in the state prison, and has appealed to this court.

There is but one assignment of error, which is that the county attorney was guilty of unusual and improper conduct during the course of the trial. A consideration of this assignment requires a statement and discussion of the evidence and the manner in which the trial was conducted.

On or about February 20, 1939, a messenger of the Arizona Grocery Company, who had been sent to a local bank with certain receipts of the company, was held up and robbed. After an investigation, Mr. and Mrs. Clarence Neeley, J. Baldwin, Mickey Warthon and Merla Hartley were arrested for complicity in the robbery. Warthon, Baldwin and Neeley entered pleas of guilty and were sentenced to serve terms in the state prison at Florence. About a month later, the defendant herein, Harold Keys, was arrested in Calexico, California. He waived extradition and was returned to Phoenix, where he was tried before a jury and convicted.

At the trial of the case, after the jury was empaneled, counsel for defendant asked that the rule be invoked, and the witnesses were duly sworn and admonished that they must refrain from discussing the case with anyone except the attorney who had called them as a witness. Among these witnesses thus placed under the rule was Vernon LaMoore, a deputy sheriff.

The state then offered the following evidence tending to connect defendant with the robbery: One witness, Edward D. Reynolds, testified in substance that he saw defendant immediately after the crime occurred driving the car occupied by the persons who committed the robbery. Mrs. Clarence Neeley testified that defendant was with her husband and the other participants in the robbery during the morning on which

it occurred, under circumstances which would warrant the reasonable deduction that he was at least an accessory before the fact, although she did not actually witness the robbery. Richard F. Harless, the county attorney, and E. W. Roach, a deputy sheriff, testified that they were in the automobile in which the defendant was returned from California and that he then made various statements which, although they did not amount to a confession of the crime, were of such a nature that it might reasonably be deduced therefrom that he had participated in some manner in it. There was other minor testimony but this was the evidence upon which the state necessarily relied for a conviction, with the exception of that of one other witness to whom we shall refer later in the opinion.

In his defense, defendant denied any participation in the crime, and also set up an alibi in regard to his alleged presence at the scene of the robbery. He was corroborated by Pearl Van Meter, who testified to a state of facts which, if true, would have made it impossible for him to have been present at the actual robbery, and by J. Baldwin and Clarence Neeley, two of the men who had pleaded guilty, who denied positively and categorically that defendant had anything to do with the offense.

It will be seen that upon this state of the evidence a jury could reasonably have found defendant either guilty or not guilty, according to which group of witnesses the jurors believed.

In addition to these witnesses, Merla Hartley was called by, and testified on behalf of, the state. She admitted her own participation in the crime and a full knowledge thereof, but stated definitely and positively that defendant had nothing to do with it, and that there was a third man who went by the same name as defendant who was implicated. The state made no claim of surprise at her testimony and did

not contend that she was a hostile witness, but permitted her to leave the stand on the first day of the trial with her testimony unchallenged. On the second day, she was recalled by the state, and this time repudiated completely her testimony of the previous day, and stated that the defendant had participated both in the planning and the execution of the crime. Her testimony on this second day was admitted over the strenuous objection of counsel for the defense who, when she first stated that she wished to change her testimony, asked permission to examine her on her *voir dire*, which request was refused by the court.

On cross-examination of the witness Hartley and of another witness for the state, Vernon LaMoore, a most surprising situation developed. It appeared that the witness Hartley had for a considerable period of time before the robbery been the paramour of Mickey Warthon, one of the men who had previously pleaded guilty. After his arrest he was not permitted to visit with or even to see her, although she protested and endeavored in every manner to be with him at least for a time. After her testimony the first day of the trial, she was informed by the witness LaMoore that Warthon was in the county jail, and she immediately repeated her request to visit him. She was informed by LaMoore that he knew she had lied in her previous testimony and that she ought to change it. She asked if she would be permitted to see Warthon and was told by LaMoore that it might be arranged. There is no explicit testimony that the arrangement was conditional upon her repudiation of her previous testimony, but the only reasonable inference from all the evidence was that such was the understanding. She was permitted to remain in the jail all of that night and to visit Warthon for a period and under circumstances not disclosed by the evidence, and on the next morning changed her testimony. It also appears that

this discussion between her and LaMoore was with the knowledge and tacit approval at least of the deputy county attorney, Wm. T. Choisser, who actually tried the case.

That the conversation between LaMoore and Hartley was in direct violation of the orders of the court under the rule cannot be questioned, and the consent thereto by the deputy county attorney, while perhaps not technically a violation of the rule, certainly was unethical in the highest degree. The trial judge correctly so considered it for when he was advised of the facts he directed the jury to disregard the entire testimony of the witnesses Hartley and LaMoore. Did this, however, cure the misconduct?

It is urged by the attorney general that it is always proper and, indeed, commendable for a witness who has testified falsely, whether intentionally or by inadvertence, to ask for permission to correct his testimony, and this is, of course, true. The objection in this case is not to the witness changing her testimony, but the manner in which she was induced to change it. It is the unquestioned rule of law that a confession obtained by hope of reward or fear of punishment is inadmissible, and we think obtaining the evidence of any witness in the same manner is equally reprehensible. Those who are in the slightest degree familiar with the nature of a loving woman know that no higher inducement could be offered to the witness Hartley to obtain the testimony which the state wished than that which was given her. Just as in the case of a confession its truth does not make it admissible if it is wrongfully induced, it makes no difference whether her first or last testimony was the truth for the evil is in the improper use of influence to obtain it. The conduct of the deputy county attorney, reprehensible under any circumstances, was doubly so when the court had specifically instructed the witnesses that they were

not to converse with each other about the case. It is true the court did its best to correct the situation by its instruction, but it is well said that it is impossible to unscramble an omelet, and we think the eggs were so thoroughly scrambled in the present case that the provisions of article VI, section 22, of the Constitution cannot cover the misconduct of the deputy sheriff who violated the rule and induced the change of statement, and of the deputy county attorney who consented, even though only tacitly, thereto.

For the foregoing reasons, it is necessary that the judgment be set aside and the case remanded for a new trial in accordance with the well-known rules of law.

ROSS, C. J., and McALISTER, J., concur.