969 P.2d 193

Theresa Eileen SPEER, individually and on behalf of Sabrina Lynn Negron, a minor, and Alberto Negron, a minor; and James A. Coulter, Petitioners,

v.

Honorable Robert DONFELD, Judge of the Superior Court of the State of Arizona, in and for the County of Pima, Respondent.

and

Cigna Healthplan of Tucson, Arizona, Inc., aka Cigna Health Care of Arizona, an Arizona corporation; Dung Nguyen, D.O., and Marie Nguyen, individually and as husband and wife; Mark M. Kartchner, M.D., and Jane Doe Kartchner, individually and as husband and wife; Southwestern Surgery Associates, Ltd., an Arizona limited liability corporation: Carondelet Health Care Corporation of Arizona dba Carondelet St. Joseph's Hospital, an Arizona corporation, Real Parties in Interest.

No. 2 CA–SA 98–0040.

Court of Appeals of Arizona, Division 2, Department A.

June 19, 1998.

Stompoly, Stroud, Glicksman & Erickson, P.C. by John G. Stompoly, Tucson, for Petitioners.

Snell & Wilmer, L.L.P. by Donald H. Smith and Martha E. Gibbs, Phoenix, for Real Parties in Interest Cigna Healthplan of Tucson and Nguyen.

Slutes, Sakrison, Grant, Hill & Rubin, P.C. by Michael B. Smith, Tucson, for Real Parties in Interest Kartchner and Southwestern Surgery Associates.

Cavett & Kaucher, P.C. by James W. Kaucher, Tucson, Attorneys for Real Party in Interest Carondelet Health Care Corporation.

*OPINION*

BRAMMER, Judge.

¶1 Petitioners challenge the respondent judge's order revoking petitioner James A. Coulter's admission pro hac vice as counsel for petitioner Theresa Speer in her underlying medical malpractice action. Petitioners appealed the order, but we determined that this court lacked appellate jurisdiction under A.R.S. § 12–2101. Thus, we dismissed the appeal and, in our discretion, redesignated the case as a special action filed pursuant to Rule 4, Ariz.R.P.Spec.Action, 17B A.R.S. Because petitioners have no remedy by appeal and because Speer is substantially affected by the revocation of Coulter's admission, we accept jurisdiction of the special action and, for the reasons discussed below, grant relief.

¶2 Donna Jewett, an attorney admitted to practice in Arizona, filed Speer's medical malpractice action in December 1994 against the real parties in interest, Southwestern Surgery Associates, Ltd.; Cigna Healthplan of Tucson, Arizona, Inc.; Carondelet Health Care Corporation of Arizona; and three doctors and their spouses. Coulter, an attorney licensed in Wyoming and a nonpracticing neurosurgeon, later applied for admission pro hac vice pursuant to Rule 33(d), Ariz.R.S.Ct., 17A A.R.S. His application was granted in August 1995, and the case was transferred the same day to Judge Rodriguez, who had already been assigned a related products liability action filed by Speer. Cigna filed its revocation motion on April 17, 1997. Less than three weeks later, the medical malpractice action was reassigned to the respondent judge, who granted the motion in August 1997, revoking Coulter's admission based on ten instances of misconduct.

¶3 Supreme Court Rule 33(d) generally requires that counsel seeking admission pro hac vice in Arizona be a member in good standing of another state's bar and that Arizona counsel be designated to facilitate communication about the matter and to receive service of process. The rule also provides that admitted counsel "consents to the juris-

diction of the court to which application is made for any alleged misconduct which occurs during the course of the matter." Ariz. R.S.Ct. 33(d). The rule, however, does not define "misconduct" and is silent as to the grounds for revoking admission. And, as the respondent judge noted in his minute entry, no Arizona cases had at that time addressed revocation of admission. Moreover, the real parties in interest do not contend that Coulter's conduct amounted to "professional misconduct" under Rule 42, Ariz.R.S.Ct.[1] We must thus look elsewhere for a definition of misconduct by which to measure Coulter's conduct and the respondent judge's revocation order.

¶4 *Webster's Third New International Dictionary* 1443 (1971) defines misconduct as an "intentional wrongdoing" or "deliberate violation of a rule of law or standard of behavior." Several Arizona cases address intentional or deliberate misconduct by an attorney, although not in the context of Rule 33(d).

¶5 In the early case of *Keys v. State*, 55 Ariz. 24, 97 P.2d 736 (1940), the supreme court reversed the defendant's conviction because the deputy county attorney who tried the case had deliberately violated the trial court's order that witnesses were not to discuss the case with anyone except the attorney who had called them as witnesses. The violation occurred when the deputy county attorney allowed an all-night jail visit by a state's witness with a codefendant who had previously pleaded guilty. The visit occurred the evening after the witness had testified. The supreme court found the attorney's conduct was "reprehensible under any circumstances." *Id.* at 28, 97 P.2d at 737.

¶6 Two years later, in *Sadler v. Arizona Flour Mills Co.*, 58 Ariz. 486, 121 P.2d 412 (1942), the court affirmed the trial court's grant of a new trial based upon defense counsel's repeated references to plaintiff in closing argument as a "soulless corporation reaching out to take money from the pocket of defendant" and to a witness as "Merrill,

---

1. Had the real parties in interest contended otherwise, we would have declined jurisdiction of the special action and referred the matter to the State Bar of Arizona pursuant to Rule 46(b), Ariz.R.S.Ct.

*alias* Gonzales," even though the witness's name had been legally changed from Gonzales to Merrill. *Id.* at 489, 121 P.2d at 413. The supreme court noted: "There was no evidence in the record to sustain either of these statements or insinuations." *Id.* Our supreme court has affirmed the granting of new trials based on similar misconduct in *Elledge v. Brand,* 102 Ariz. 338, 429 P.2d 450 (1967) (introduction of evidence with no bearing on trial issues intended only to prejudice jury was grounds for reversal); *Sisk v. Ball,* 91 Ariz. 239, 371 P.2d 594 (1962) (new trial proper when statements to jury not supported by facts and resulted in prejudice); and *Mayo v. Ephrom,* 84 Ariz. 169, 325 P.2d 814 (1958) (new trial proper when counsel made numerous inappropriate comments to jury).

¶ 7 More recently, in *Grant v. Arizona Public Service Co.,* 133 Ariz. 434, 652 P.2d 507 (1982), the court determined that plaintiff's counsel had committed misconduct in closing argument by arguing his personal beliefs, facts that were not in evidence, and inferences that were not legitimately supported by an exhibit, but deferred to the trial court's decision that the misconduct did not require a new trial. In *State v. Cannon,* 133 Ariz. 216, 217, 650 P.2d 1198, 1199 (1982), the court also declined to reverse a first-degree murder conviction although the prosecutor had failed to disclose to the defense that the trigger on the gun the defendant had used had "become broken and tended to jam" by the time of trial. The misconduct was found not to warrant a mistrial because facts about the gun's condition at trial had been presented to the jury. Finally, this court affirmed the trial court's imposition of sanctions against both parties' counsel in *Precision Components, Inc. v. Harrison, Harper, Christian & Dichter, P.C.,* 179 Ariz. 552, 554, 880 P.2d 1098, 1100 (App.1993), because they had violated the Uniform Practice Rules by not citing to the record for the location of facts related to a summary judgment motion, despite having "submitted *over 3500 pages* of

exhibits in support of or in opposition to this motion."

¶ 8 Appellate courts that have reviewed the revocation of an attorney's admission pro hac vice have generally upheld the revocation absent an abuse of the trial court's discretion. *See generally* Ronald V. Sinesio, Annotation, *Attorneys: Revocation of State Court Pro Hac Vice Admission,* 64 A.L.R.4th 1217 (1988). *See also Hmielewski v. Maricopa County,* 192 Ariz. 1, 960 P.2d 47 (App. 1998) (attorney sanctions reviewed for abuse of discretion).

¶ 9 In determining what constitutes an abuse of discretion, our supreme court in *Grant* set forth the following factors: (1) did the court base its ruling on an error of law, (2) was the determination reached without considering the evidence, (3) was there other substantial legal error in addition to the attorney misconduct, and (4) does the record contain substantial evidence to support the court's ruling. Here, the respondent judge found that Coulter had "failed to comply with Arizona procedures and practices, ignored court orders, [and] made no attempt to learn or follow Arizona law, procedure or practices." The judge also found that Coulter's actions were "contemptuous of the Court and . . . ha[d] adversely affected [the] proceedings," although he made no specific finding that Coulter had engaged in intentional or deliberate misconduct. We consider the factors in *Grant,* together with the respondent judge's findings, to determine whether the judge abused his discretion in revoking Coulter's admission pro hac vice.[2]

## NURSES' INTERVIEWS

¶ 10 The first instance the respondent judge cited in support of revocation involves Coulter's desire to interview Carondelet's nurses ex parte. When Carondelet objected to the interviews at the pretrial conference before Judge Rodriguez, Speer stipulated that she would depose, rather than interview, the nurses. When Cigna also objected to ex parte interviews of its employ-

---

2. Because we review for an abuse of discretion based on the factors set forth in *Grant* and because the real parties in interest have agreed, as noted above, that professional misconduct is not at issue here, we decline to address Coulter's argument that the respondent judge should have required clear and convincing evidence of misconduct before revoking his admission.

ees, Judge Rodriguez ordered Speer and Cigna to brief the issue. Speer's brief contended that Arizona case law permits ex parte interviews of corporate employees and concluded by requesting interviews of both Cigna's and Carondelet's "non-'alter ego' corporate employees." This request caused Carondelet to file a response, in which it objected to interviews of its nurses based on Speer's prior stipulation and requested attorney's fees for having to respond. Judge Rodriguez agreed the stipulation precluded the interviews and awarded Carondelet attorney's fees, finding that, "[b]ased on this stipulation, it was inappropriate for plaintiffs to include the Carondelet nurses in their analysis and brief requesting an ex-parte interview." Because Judge Rodriguez found that Coulter's conduct was merely "inappropriate," the record fails to support a conclusion that Coulter committed intentional or deliberate misconduct in seeking the interviews.

## INACTIVE CALENDAR STIPULATION

■ ¶ 11 The second instance the respondent judge cited concerns a stipulation to continue that did not bear the signature of Cigna's attorney. The record shows that, in October 1995, the court administrator notified the parties to the medical malpractice action that it had been placed on the inactive calendar pursuant to Rule V(e), Ariz.Unif.R.P.Super.Ct. 17B A.R.S. This notice was sent to Speer's Arizona counsel, Jewett, who on December 1, 1995, prepared and sent counsel in the medical malpractice action a stipulation to continue on the inactive calendar the products liability action, which did not involve Cigna, rather than a stipulation to continue the medical malpractice action, which did. Cigna's counsel, who apparently believed the stipulation applied to the medical malpractice action, told Jewett he would not agree to continue the case on the inactive calendar. During this time, the court administrator notified the parties to the products liability action that it had also been placed on the inactive calendar. When Judge Rodriguez received Jewett's stipulation, she too apparently believed it applied to the medical malpractice action and noted that it had not been signed by Cigna's attorney. Consequently, she issued a minute entry in

which she stated it "is not clear whether this was merely an oversight or whether it was intended" and requested "clarification" from counsel. Jewett informed Judge Rodriguez that the stipulation applied only to the products liability action and that the signature of Cigna's counsel was thus not required. Jewett then moved to continue the medical malpractice action on the inactive calendar, which Cigna opposed. After a hearing, Judge Rodriguez denied the motion and returned the medical malpractice action to the active calendar. At best, this record simply shows that the existence of two pending cases that had been assigned to the same judge and that involved most of the same parties created some procedural confusion. The record utterly fails to show that Coulter, who did not prepare, sign, or submit the stipulation, engaged in any intentional or deliberate misconduct in connection with it.

## DISCOVERY FAILURE

■ ¶ 12 The next reason the respondent judge cited was Coulter's failure to conduct discovery after Judge Rodriguez had specifically postponed ruling on pending motions for summary judgment for that purpose. Coulter told the judge he had misunderstood her ruling, believing he was precluded from conducting further discovery until she ruled on the summary judgment motions. Judge Rodriguez, apparently accepting Coulter's explanation, clarified the issue by telling Coulter she had not intended to preclude the taking of any depositions and, in any event, the matter was moot because she had denied the motions for summary judgment. Again, the record does not show any intentionally wrongful conduct by Coulter or his deliberate violation of any laws, rules, or court orders.

## EXPERT OPINIONS

¶ 13 As another instance supporting revocation, the respondent judge cited Coulter's purported failure to disclose the expert opinions of Dr. Mirra and their bases until after the disclosure deadline. In her minute entry of September 5, 1995, however, Judge Rodriguez found that "Dr. Mirra was timely disclosed and that his proposed testimony was

timely disclosed in answer to interrogatories." Thus, no misconduct occurred.

## EXPERT REPORTS

¶ 14 Coulter also allegedly failed to disclose expert reports that had been prepared well before the motion for summary judgment. In citing this reason, the respondent judge referred to the minute entry of April 29, 1997. That minute entry, however, neither referred to nor sanctioned Coulter or Jewett for any alleged failure to disclose expert reports. The only reference in the minute entry to experts was the court's denial of Carondelet's motions to strike the affidavit of Dr. Mirra and to preclude his testimony at trial. The minute entry thus does not support a finding of misconduct.

## CONTINUANCE OF DEPOSITION

■ ¶ 15 Citing a minute entry of November 22, 1996, the respondent judge found misconduct in Coulter's opposition to the continuance of a deposition, requested because an attorney for one of the defendants had suffered a death in the family. Coulter had "refused" to continue the deposition unless opposing counsel agreed to continue the hearing on a pending motion for summary judgment, for which Coulter believed the deponent's testimony was important. Judge Rodriguez later ordered both the deposition and the hearing continued. It appears that the "refusal" to accede to the continuance was by both Coulter and Jewett, and Jewett's explanatory letter of November 21, 1996, shows that she agreed with Coulter's characterization, in his letter of the previous day, that the "refusal" was a conditional, tactical maneuver. Although this record shows that the attorneys on both sides were intransigent about refusing to continue either matter and that Coulter may have been insensitive, we do not believe his "refusal" amounts to misconduct warranting revocation of his admission pro hac vice.

## SPEER'S DEPOSITION

■ ¶ 16 Coulter allowed Speer to be deposed, without objection, and then moved to strike the deposition on the ground her testimony had been influenced by medications she was taking that might have affected her memory. Citing this conduct as an additional reason to revoke his admission pro hac vice, the respondent judge faulted Coulter, as a physician, for failing to be aware of the potential effect of medications his client was taking and for not notifying opposing counsel of the potential problem until his cross-examination at the end of the deposition. The record establishes that, although both Jewett and Coulter were present at Speer's deposition and each noted that she exhibited problems in responding, both agreed to continue with the deposition. The reply filed in support of Coulter's motion to strike Speer's deposition recites that, although he suspected she was having drug-induced problems during the deposition, she had previously given him inaccurate information about the medications she was taking and that it was only later he discovered the accurate information. Coulter also submitted affidavits from two physicians in support of his motion to strike her deposition.

¶ 17 The court denied the motion to strike Speer's deposition, leaving Coulter in the position of having the deposition available for the defendants to use against his client. We find it inappropriate that the respondent judge faulted Coulter partly on the ground he is a physician because nothing in the record indicates either that he was an active medical practitioner in this case or that he was treating Speer with respect to her medications. The record supports neither a finding that Coulter deliberately presented his client for deposition knowing her testimony would probably be influenced by her medication nor a conclusion that his conduct was intentionally wrongful. The respondent judge's reliance on these facts to revoke Coulter's admission was misplaced.

## OREGON LITIGATION

¶ 18 Based upon a "review of the file" and Coulter's "actions in this case," the respondent judge found it to be misconduct for Coulter to use "expert depositions in this case to obtain opinion testimony regarding an ongoing matter in Oregon." The record, however, does not support the respondent

judge's finding. The judge apparently based his finding on the following allegation in Cigna's revocation motion: "Coulter sought to ask opinion questions of a treating physician apparently for the purpose of discovery in both this and plaintiffs' medical negligence case ongoing on another issue in Oregon; and then, when counsel for the physician refused to let her client answer the questions, [Speer] moved to compel answers to the questions relating to this case in the Oregon matter." Cigna nonetheless failed to submit any evidence in support of this allegation, either by attaching any to the revocation motion itself or by presenting it at the hearing on the motion before the respondent judge. The record does show, however, that after the hearing, Cigna submitted a copy of the motion to compel filed in Oregon by Coulter's co-counsel, with co-counsel's attached affidavit, to the respondent judge at his request.[3]

¶ 19  From our review of the motion to compel and the attached affidavit, copies of which were appended to Cigna's brief, along with a copy of the opposition filed by counsel for the Oregon defendants, neither the motion nor the attached affidavit supports the respondent judge's finding. The only ostensible support for the finding is the following statement by Oregon defense counsel in her opposition to the motion to compel: "[T]he motion to compel is simply [Speer's] back-door method of attempting to obtain expert testimony to use in connection with her concurrent Arizona case . . . ." As noted above, however, a copy of this opposition was not a part of the file the respondent judge reviewed and, even if it had been, the opposition contains nothing more than conjecture by Oregon counsel as to the reason for Speer's motion. Further, Speer's motion to compel was denied by an Oregon judge, and we find nothing in that which would disadvantage Cigna in defending this case in Arizona. In sum, the record does not support the respondent judge's finding; thus, it cannot serve as a basis to revoke Coulter's admission pro hac vice.

**PRETRIAL STATEMENT**

¶ 20  The respondent judge found as an additional reason for revoking Coulter's admission pro hac vice that he had refused to cooperate in preparing a joint pretrial statement and filed, instead, a separate pretrial statement in contravention of Rule VI, Ariz.Unif.R.P.Super.Ct. Our review of the transcript of the hearing that preceded the filing of the separate statement shows that Judge Rodriguez did not specifically order a joint pretrial statement, but rather, in response to an argument by Cigna's counsel, directed counsel to file a tentative joint pretrial statement and, in anticipation of their being unable to do so jointly, offered to set a subsequent hearing to agree on a statement with her participation. Coulter later filed a "Supplemental Pretrial Statement," which included a request for a formal settlement conference, giving as a reason that "[r]elations between defense counsel and plaintiff's counsel have deteriorated to the point of personal animosity and Defense counsel commented at the last hearing that a joint pretrial memo was precluded." At that hearing before Judge Rodriguez, Cigna's counsel had requested a pretrial conference, citing numerous problems with opposing counsel. Other defense counsel had also requested such a conference, stating there were contested issues upon which counsel could not agree.

¶ 21  Based on this record, it does not appear to have been unreasonable for Coulter to have concluded that he and opposing counsel would be unable to prepare and file a joint pretrial statement and, in an effort to comply with Judge Rodriguez's order, to have filed a separate pretrial statement. Indeed, opposing counsel did the same. We also find nothing in the record to support a finding that Coulter failed or refused to meet or discuss in good faith the preparation of a joint pretrial statement. See Uniform Rule VI(d). Nor does the record show that opposing counsel moved to bring any alleged problem with Coulter to

---

**3.** When Coulter learned of this, he characterized it as "ex parte" in a letter to Cigna's counsel and complained that he had not been provided with copies of the Oregon documents submitted to the respondent judge.

the court's attention pursuant to Uniform Rule VI(b). Consequently, the record does not justify the respondent judge's conclusion that Coulter deliberately violated Uniform Rule VI or Judge Rodriguez's order.

## REVOCATION HEARING

¶ 22 The respondent judge's final ground for removing Coulter was that he had committed misconduct when he obtained a continuance of the hearing on the motion to revoke his admission pro hac vice, indicating he needed to obtain separate counsel to represent him, as well as witnesses to testify, but then appeared at the hearing without either. The transcript of the hearing reveals that the respondent judge did not raise the matter with Coulter or put him on notice that it would be used to support revocation. With no showing that Coulter sought the continuance in bad faith, the respondent judge erred in citing these circumstances to support revocation.

## CONCLUSION

¶ 23 Pro hac vice counsel may easily enter cases in our state to appear and represent their clients. Supreme Court Rule 33(d), unfortunately, neither provides guidance as to whether these counsel, when accused of misconduct in the handling of those cases, may just as easily be required to exit nor prescribes a standard against which counsel's conduct may be measured in determining this issue. The respondent judge, faced with the same absence of direction from the rule, looked elsewhere for guidance, finding support in the statement of an Ohio court:

> The trial court's power to protect its pending proceedings includes the authority to dismiss an attorney who cannot, or will not, take part in them with a reasonable degree of propriety. Similarly, attorney disqualification can be warranted in cases of truly egregious misconduct which is likely to infect future proceedings.

*Royal Indem. Co. v. J.C. Penney Co.*, 27 Ohio St.3d 31, 501 N.E.2d 617, 620 (1986) (citation omitted). There, counsel had deceived the court and opposing counsel for over two years as to the existence of documents, production of which had been continuously requested. Although the admonition of *Royal Indemnity Co.* is good advice for courts presented with counsel who are engaging in misconduct as we find it defined in Arizona or whose conduct is "truly egregious" and likely to "infect" future proceedings, the record here fails to support a conclusion that Coulter had engaged in such conduct.

¶ 24 None of the ten cited instances of "misconduct," either individually or collectively, amounted to conduct that was intentionally wrong or that deliberately violated any law, court rule, or order. Accordingly, we conclude that the respondent judge abused his discretion in revoking Coulter's admission. *See Grant* (court abuses discretion if substantial evidence does not support ruling). We therefore grant special action relief and reinstate Coulter's admission pro hac vice.

DRUKE, C.J., and FLÓREZ, P.J., concur.