722 P.2d 236

Marlyn BECHTEL, Petitioner,

v.

Hon. C. Kimball ROSE, Judge, Superior Court In and For the COUNTY OF MARICOPA, Respondent,

and

The ARIZONA DEPARTMENT OF ECONOMIC SECURITY, Real Party in Interest.

No. CV–86–0043–SA.

Supreme Court of Arizona, En Banc.

June 18, 1986.

Mahoney, Lehman, Rood & Rempe, P.C. by John W. Rood, Phoenix, for petitioner.

Robert K. Corbin, Atty. Gen., John E. Wolfinger, Asst. Atty. Gen., Phoenix, for real party in interest.

GORDON, Vice Chief Justice.

This special action raises novel and complex questions with regard to grandparents' rights in the disposition of their parentless grandchildren. The particular issues that we must address are: did the juvenile court commit reversible error by denying the grandmother's motion to intervene in her grandchild's dependency hearing; and by denying the grandmother's petition for appointment as her grandchild's guardian and conservator?

The factual background giving rise to this case is not in dispute. The infant around whom swirls this controversy was born in March, 1985. In September, 1985, when the infant was six months old, his mother was killed in an auto accident. Immediately thereafter, the Department of Economic Security ("DES") assumed care and custody of the infant pending permanent resolution of his case. On October 2, 1985, a dependency commitment hearing was held concerning the infant. On that occasion, the maternal grandmother appeared through counsel but was advised that she had no standing in the matter but could move to intervene at a later time. The dependency hearing was continued until January 29, 1986, and the infant was ordered to remain a temporary ward of the juvenile court and committed to the custody of the DES until that time. The grandmother's request to review the dependency file was denied.

On November 21, 1985, the father of the infant formally relinquished his parental rights to the child. Six days later the grandmother filed a motion to intervene pursuant to Rule 24(b), Arizona Rules of Civil Procedure, 16 A.R.S. The motion was accompanied by a proposed Petition for Appointment as Guardian and Conservator of the Minor. Oral argument was requested but denied. On December 5, 1985, the court denied the motion to intervene, and on January 15, 1986, denied the petition for appointment as guardian. On January 24, 1986, the grandmother filed this special action seeking relief from the denial of her motion to intervene and petition for guardianship. On the same day we entered a stay of all proceedings and ordered "that the respondent court not conduct any pro-

ceedings in this matter which award the minor child to any person or institution until further order of this court."

## I.

█ As a preliminary matter we must address the jurisdiction of the Court to entertain this special action. The state contends that Rule 25(a), Rules of Procedure of the Juvenile Court, 17A A.R.S., grants to petitioner the right to appeal the denial of intervention and guardianship since they constitute final orders.[1] Moreover, the state argues that not only is the avenue of appeal available, but that Rule 24(c), Rules of Procedure of the Juvenile Court, gives priority to juvenile appeals and thereby provides an "equally plain, speedy and adequate remedy." *See* Rule 1, Rules of Procedure for Special Actions, 17A A.R.S.

█ In response the petitioner argues that denial of a motion to intervene is a nonappealable order, citing *Cobre Grande Copper Co. v. Greene*, 8 Ariz. 98, 68 P. 524 (1902). In truth *Cobre Grande* does hold that "[the] right of appeal is manifestly only for parties to the suit....", 8 Ariz. at 101, 68 P. at 525, and obviously a movant denied intervention is simultaneously denied party status. However, the vitality of *Cobre Grande* has debilitated with the passage of time and it is now woefully out of step with modern civil procedure. For example, *Cobre Grande* would deny appeal to intervenors of right, even though "[i]t is thoroughly settled that one who has sought intervention of right may appeal from a denial of his application and the appellate court will reverse if it concludes that he was entitled to intervene of right." 7A C. Wright and A. Miller, *Federal Practice and Procedure* (1972) § 1923, p. 628 (citations omitted). In addition, with regard to permissive intervention, Wright and Miller posit that "[i]t is clear enough what the rule ought to be. Any denial of intervention should be regarded as an appealable final order—as it surely is so far as the

would-be intervenor is concerned." 7A *Federal Practice and Procedure* § 1923, at 627. *See also Spangler v. Pasadena City Bd. of Education*, 552 F.2d 1326, 1329 (9th Cir.1974) ("Although a district court's discretion in this regard [permissive intervention] is broad, it is nevertheless subject to review on appeal.")

The mere fact that denial of permissive intervention is an appealable order does not mean, however, that appeal in this instance is an "equally plain, speedy, or adequate remedy".

█ We must be mindful that we are dealing with the care and custody of a very young child and vigilant to protect his right to a suitable and speedy placement. "When the urgent and agonizing nature of the numerous proceedings affecting custody is taken into consideration, with the resulting detriment to the [child] involved, it is apparent that the ultimate remedy available to petitioner by way of appeal is neither plain, speedy, nor adequate." *Silver v. Rose*, 135 Ariz. 339, 343, 661 P.2d 189, 193 (App.1982).

█ Where the facts of a case so compel, we have not hesitated to grant extraordinary relief. *See, e.g., Caruso v. Superior Court*, 100 Ariz. 167, 412 P.2d 463 (1966) (writ of prohibition appropriate where natural father sought to prevent adoption of his illegitimate son). The facts of this case equally compel exercise of our judicial discretion. The infant is now more than one year old, and has already spent one-half of his life bereft of family. An appeal might involve unconscionable delay, and even then "the very question before us now would be before us then, only months or perhaps years later." *Silver v. Rose*, 135 Ariz. at 343, 661 P.2d at 193. As we noted in *Caruso*, "[i]t is clear that the propriety of granting the writ depends upon the facts of each case. The guiding principle must be our obligation to see that essential jus-

---

1. The petitioner has, in fact, appealed the denial of her petition for guardianship "out of an abundance of caution."

tice is done." 100 Ariz. at 172, 412 P.2d at 466.

Moreover, the issues raised by this case are clearly of significance. Few tasks are more delicate and demanding than the permanent placement of parentless children, and the role that grandparents may play in this process surely implicates statewide concerns. Accordingly, we have assumed jurisdiction in this special action in order "to see that essential justice is done" and a crucial issue addressed.

## II.

The petitioner asserts that the juvenile court's denial of intervention was an abuse of discretion. Petitioner sought intervention under Rule 24(b) of the Rules of Civil Procedure, which provides that a movant "... may be permitted to intervene in an action ... [w]hen an applicant's claim or defense and the main action have a question of law or fact in common." Rule 24(b)(2). Permissive intervention is well within the discretion of the trial court, but is nonetheless subject to appellate review. *Spangler v. Pasadena City Bd. of Education, supra.*

 It is well settled in Arizona that Rule 24 "is remedial and should be liberally construed with the view of assisting parties in obtaining justice and protecting their rights." *Mitchell v. City of Nogales,* 83 Ariz. 328, 333, 320 P.2d 955, 958 (1958). Under this liberal standard, "the intervenor-by-permission does not even have to be a person who would have been a proper party at the beginning of the suit...." *Usery v. Brandel,* 87 F.R.D. 670, 677 (W.D. Mich.1980), citing 7A C. Wright and A. Miller, *Federal Practice and Procedure* § 1911, at 539. When determining whether permissive intervention should be granted, the trial court must first decide whether the statutory conditions promulgated in Rule 24(b)(1) or 24(b)(2) have been satisfied. If any of the conditions for intervention have been satisfied, then the trial court

may consider other factors in making its decision:

> "These relevant factors include the nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the merits of the case. The court may also consider whether changes have occurred in the litigation so that intervention that was once denied should be reexamined, whether the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented."

*Spangler v. Pasadena City Bd. of Education,* 552 F.2d at 1329 (footnotes omitted).

In the present case there is absolutely no indication that the juvenile court considered these factors; indeed, there is no indication at all as to why the motion was denied. The paucity of the record before us makes it difficult to indulge the discretion of the trial court, but in any case we need not make that endeavor since this particular appeal raises a legal, not factual, issue. The legal issue raised is: should grandparents, as a general rule, be allowed to intervene in the dependency determination of their parentless grandchildren under Rule 24(b)? We answer in the affirmative, and conclude that the juvenile court abused its discretion by summarily denying the petitioner's motion to intervene.

We must premise our discussion of grandparents' intervention rights with the observation that this area of the law involves a complex amalgam of probate law, domestic relations law, and the juvenile code. The provisions of each have a bearing on the outcome of this case, yet none disposes of the issue. Nevertheless, we may be guided by the one rule common to

each statutory scheme: that the best interest of the child shall govern.[2]

■ We are convinced that the best interest of a parentless child is usually served by allowing his grandparents to intervene in a dependency hearing. If a child is adjudged dependent by a juvenile court, the juvenile court acquires the power to place the child in a wide range of statutorily prescribed homes outside the family. A.R.S. § 8–241(A)(1); *Silver v. Rose, supra.* It is therefore apparent that grandparents, who are invested with a natural and abiding love for their grandchildren, should be allowed to intervene in the dependency process unless a specific showing is made that the best interest of the child would not be served thereby. Such intervention would not "unduly delay or prejudice" the process, Rule 24(b), Rules of Civil Procedure, and would almost certainly shed valuable light on the best placement for the child and the grandparents' own suitability for custody, should they desire it. Since the lodestar of the juvenile court must be "to provide individualized justice for children....", *Application of Gault*, 99 Ariz. 181, 188, 407 P.2d 760, 765 (1965), *rev'd on other grounds*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), grandparents should normally be allowed to intervene. Indeed, intervention by grandparents willing and able to assume control and custody of the child might obviate the need for a non-familial placement of any duration.[3]

We have always placed a high value on the integrity of the family. In one of our earliest decisions we noted that, "The voice of nature ... cannot be silenced. 'The law does not fly in the face of nature, but rather acts in harmony with it.'" *Harper v. Tipple*, 21 Ariz. 41, 44, 184 P. 1005, 1006 (1919) (citation omitted). It has been repeatedly emphasized that "courts should bend over backwards, if possible, to maintain the natural ties of birth." *Anonymous v. Anonymous*, 25 Ariz.App. 10, 11, 540 P.2d 741, 742 (1975). *See also In the Matter of the Appeal in Cochise County Juvenile Action No. 5666–J*, 133 Ariz. 157, 650 P.2d 459 (1982) (the right to raise one's family is an essential, basic right).

Moreover, in Arizona we have long been solicitous of grandparents' role in the family. *See, e.g., Koehler v. Koehler*, 121 Ariz. 592, 592 P.2d 788 (App.1979). In fact, where it has been determined that the best interests of the child so demand, grandparents have been awarded custody of their grandchildren despite parental objections. *See Dickason v. Sturdavan*, 50 Ariz. 382, 72 P.2d 584 (1937); *Gowland v. Martin*, 21 Ariz.App. 495, 520 P.2d 1172 (1974). Recognition of the important role in the family played by grandparents is not limited to the judiciary. Grandparents are among those people eligible to become guardian of a child found to be dependent. A.R.S. § 8–241(A)(1)(g). In 1983 our legislature specifically provided for visitation rights for grandparents and great-grandparents. A.R.S. § 25–337.01. Indeed, A.R.S. § 25–337.01(A)(2) provides that where "[a] parent of the child has been deceased for at least three months, and the grandparents were the parents of the deceased parent of the child...." the court may grant visitation rights. Should the infant at issue here be adjudged dependent and eventually be placed for adoption, then the petitioner would automatically lose all visitation rights, A.R.S. § 25–337.01(D)—yet another reason why intervention is appropriate.

We recognize that there is a split among the states on the very question we now

---

2. A.R.S. § 14–5206 (probate code) provides in part that, "The Court shall appoint as guardian a person whose appointment would be in the best interests of the minor." A.R.S. § 25–332(A) (domestic relations) provides in part that, "The Court shall determine custody ... in accordance with the best interests of the child." Finally, "[t]he welfare of the child is the prime consideration of a juvenile code." *In re Pima County Juvenile Action No. J–31853*, 18 Ariz.App. 219, 220, 501 P.2d 395, 396 (1972).

3. We emphasize that intervention merely allows the grandparents to be heard; it does not confer any right to custody upon them. That decision remains the province of the trial judge. Nor do we necessarily limit our decision today solely to grandparents; other relatives might also be accorded intervention should the need and propriety of their intervention be demonstrated.

address. In *P.W. v. A.W.*, 670 S.W.2d 563 (Mo.App.1984) the Missouri Court of Appeals upheld the juvenile court's denial of Baby Paul's grandparents' motion to intervene in a neglect proceeding. The court noted that the grandparents' visitation rights (granted by the juvenile court) were "sufficiently protected in the hearing." 670 S.W.2d at 566. The court went on to conclude, however, that "our decision is limited to the circumstances of this case." *Id. Hamel v. Seekell*, 404 So.2d 1144 (Fla. App.1981), involved a dependency hearing wherein the grandmother sought to intervene. The mother opposed the motion. The trial court denied the motion and the Court of Appeals denied the grandmother's petition for a writ of certiorari. The appeals court noted that grandparents, "though *eligible* to receive custody, [have] no *right* to custody should the child be adjudged dependent." 404 So.2d at 1146 (emphasis in original).

In contrast, the Iowa Supreme Court reached precisely the opposite conclusion. In *In Interest of J.R.*, 315 N.W.2d 750 (Iowa 1982), the Iowa court held that the mere fact that grandparents have a legal right to be *considered* as guardians and custodians of children following termination of parental rights grants to them the right to intervene in the proceedings under Iowa law. The Court then concluded that it was "unnecessary to consider ... the grandparents' assertion that they have a statutory right to intervene pursuant to ... [grandparents' visitation rights]." 315 N.W.2d at 752 (statutory citation omitted).

In Arizona grandparents are also eligible to be considered as guardians for their dependent grandchildren. A.R.S. § 8–241(A)(1)(g). However, we do not hold that mere eligibility for consideration automatically confers a right to intervene in dependency proceedings. Our holding today is that grandparents should be allowed to intervene in their parentless grandchildren's dependency proceedings unless it would not be in the child's best interest. Although no explicit statutory standing to intervene is granted to grandparents *qua* grandparents, the tenor of Arizona's legislative and judicial decisions, as well as sound public policy, demands that grandparents be accorded this right.

 In this case there has been no showing that intervention would be adverse to the best interest of the child. Indeed, we must assume that intervention would be appropriate, since "[i]n reviewing a denial of intervention, we will accept as true the allegations of the motion." *Saunders v. Superior Court In and For County of Maricopa*, 109 Ariz. 424, 425, 510 P.2d 740, 741 (1973). Before ruling on a motion to intervene, the juvenile court should consider and weigh the relevant factors identified today, and only if they show that intervention would not be in the best interest of the child should intervention be denied. Because there is no evidence that the juvenile court made an individualized determination of the petitioner's motion to intervene, based upon the rule enunciated today, we must conclude that the juvenile court abused its discretion by summarily denying intervention.

### III.

 The petitioner also appeals from the juvenile court's decision to deny her petition for guardianship and conservatorship. At the time of the petition no dependency hearing had been held and no adjudication of dependency made. It is the law in Arizona that "[b]efore the Juvenile Court can consider what disposition it can make in the best interest of the child, it must have jurisdiction. Jurisdiction in the juvenile court does not attach until there has been an adjudication based upon evidence that the child is dependent, neglected, incorrigible, or delinquent." *Caruso v. Superior Court*, 100 Ariz. at 173, 412 P.2d at 467. *See also Silver v. Rose, supra;* A.R.S. § 8–241(A)(1). Because the dependency determination is a factual and legal predicate to the exercise of juvenile court subject matter jurisdiction over the permanent disposition of minors, and one has not yet been made, the juvenile court was without authority to grant petitioner's petition

for guardianship. The juvenile court could only have granted the petition by acting in excess of his jurisdiction and legal authority.[4] Consequently, the denial of the petition was not an abuse of discretion.

 However, the juvenile court does have the power to make temporary orders regarding the welfare of a child awaiting a dependency determination. A.R.S. § 8–223. The petition for guardianship, while premature as a petition for permanent placement, could have been treated by the juvenile court as a petition for temporary custody. Where the welfare of children is at stake we should liberally construe pleadings to promote justice. *Cf. In re the Matter of Pima County Juvenile Action No. 18635 v. Fisher*, 125 Ariz. 430, 610 P.2d 64 (1980) (minor sought writ of habeas corpus for return to foster parent custody although special action was actually appropriate; nonetheless "this court will consider the case and grant appropriate relief").

 By treating the petition as one for temporary custody, the juvenile court could begin the process of investigating the grandparents for fitness to assume custody and thereby expedite the child's placement. *See* Rule 16, Rules of Procedure of the Juvenile Court. Indeed, we expect the juvenile court to do this, for otherwise he will be unable to determine if a grandparents' motion to intervene may be denied. The ultimate determination of whether the petition for temporary custody should be granted remains, of course, the province of the juvenile judge and his decision will not ordinarily be disturbed. In this case we cannot say that the juvenile court abused its discretion, particularly since no investigation of the petitioner has been conducted. However, the petitioner is free to recast her petition for guardianship as a petition for temporary custody and renew her application to the court, at which time a proper evaluation of her petition should be made.

The relief sought as to the motion to intervene is granted, and the respondent is ordered to reconsider the motion in accordance with this opinion; the relief sought as to the petition for guardianship and conservatorship is denied with leave to seek temporary custody; and the stay of proceedings entered January 24, 1986, is dissolved.

HOLOHAN, C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.

---

4. Nor would the petitioner have benefited by directing her petition to the probate or domestic relations courts. While these courts' powers overlap those of the juvenile court to some extent, *see* A.R.S. § 14–5204 (appointment of a guardian); A.R.S. § 25–331 (child custody proceedings); and A.R.S. § 25–335 (court may order investigation and report concerning custodial arrangements for child), the juvenile court remains the forum for resolving questions of dependency and concomitant placement. When adjudicating the dependency of a child, the juvenile court's orders take precedence over the orders of any court save the court of appeals and supreme court. A.R.S. § 8–202(D). This includes matters of temporary custody preceding the actual dependency determination.