839 P.2d 446

The **ARIZONA DEPARTMENT OF ECONOMIC SECURITY, an agency of the State of Arizona, Petitioner,**

v.

The **SUPERIOR COURT OF THE STATE of Arizona, JUVENILE DIVISION, In and For the COUNTY OF MARICOPA, Barry G. Silverman, a judge thereof, Respondents,**

Suzanne **ALAGNA and Joseph Alagna, married persons, and A.F., a minor child, Respondents–Real Parties in Interest.**

No. 1 CA–SA 92–0029.

Court of Appeals of Arizona, Division 1, Department B.

May 12, 1992.

Reconsideration Denied June 19, 1992.

Review Denied Nov. 17, 1992.

Grant Woods, Atty. Gen. by Virginia L. Richter, Asst. Atty. Gen., Phoenix, for Arizona Dept. of Economic Sec.

Frances K. Baseden, Phoenix, for Alagnas.

Robert Mothershead, P.C. by Robert Mothershead, Alan Shaw, Phoenix, for guardian ad litem for Child.

Martin LaPrade, Phoenix, for Mother.

Gregory R. Jordan, Phoenix, guardian ad litem for Mother.

Robbins & Robbins by Gary E. Robbins, Janet S. Robbins, Scottsdale, for amicus curiae.

## OPINION

MELVYN T. SHELLEY, Judge.*

The Arizona Department of Economic Security ("DES") filed a petition for special action contesting the order of the trial court allowing Suzanne Alagna and Joseph Alagna, husband and wife ("Alagnas") to intervene in a dependency action involving A.F., a minor child.

We have previously accepted jurisdiction with opinion to follow. This is that opinion. The issue involved is a novel question that should be determined without waiting the length of time necessary for civil appeals to be decided.

* NOTE: The Honorable Melvyn T. Shelley was authorized to participate in this case by the Chief Justice of the Arizona Supreme Court pur-

On July 31, 1991, the trial court found A.F. to be a dependent child. DES was made the legal custodian of A.F. It placed the child in a non-relative foster home. Subsequently, the Alagnas filed a motion to intervene. The Alagnas are cousins of A.F., both maternally and paternally. The trial court granted the motion to intervene stating in pertinent part:

> The rationale of *Bechtel v. Rose,* 150 Ariz. 68, 722 P.2d 236 (1986), is that some adult relatives "are invested with a natural and abiding love" for the children in their family. Although *Bechtel* involved grandparents, this natural and abiding interest might well be found in aunts, uncles, cousins and siblings. *Bechtel* holds that in the absence of a specific showing that intervention would be deleterious, intervention generally should be permitted in appropriate circumstances when family members with a natural and abiding love of the child request it.
>
> In this case, the proposed interveners (the Alagnas) are the child's [ (A.F.) ] second cousins. They met [A.F.] only one time. They became aware of the dependency proceedings when they were contacted by the paternal grandfather, ... [He] has custody of [A.F.'s] half-sibling and was requested by DES to take [A.F.] as well. [He] was unable to do so. Consequently, [A.F.], age two, has been in foster care with strangers for seven months. After [he] notified the Alagnas of this situation, they stepped forward. It is true, as DES points out, that the Alagnas are "only second cousins." Second cousins or not, the Alagnas are people in [A.F.'s] family who care about her.
>
> The Court's first obligations are to protect the youngster and try to return her to her parents if possible. The intervention of other relatives does not change this. The Court expresses no opinion on whether the child should be placed with the Alagnas if rehabilitation of the parents is unsuccessful. Intervention merely grants standing to be heard. They

suant to Arizona Constitution article VI, section 20.

have an interest in this child at least as sincere and naturally felt as that claimed by the Arizona Department of Economic Security....

An older half-sibling of A.F., through the mother, had previously been placed with her grandfather as a dependent child as to both parents. It appears that the mother has had a drug addiction. A.F. was left with various people by the mother. Finally, the child was left with a caretaker in Phoenix and abandoned. The caretaker reported to child protective services that the child was abandoned and that her parents' whereabouts were unknown. The mother was contacted three days later and acknowledged that she was homeless and unable to care for A.F. The father's whereabouts were unknown. A.F. was placed in foster care and this dependency action followed. The natural father was served, but failed to appear. The mother appeared through an attorney and a guardian *ad litem*, and the child through an attorney/guardian *ad litem*. At the time the dependency petition was filed, the mother was incarcerated. The paternal grandfather was requested by DES to take A.F. He was unable to do so. The paternal grandfather contacted the Alagnas who were interested, and they stepped forward and spent considerable time and money in pursuing intervention.

DES asserts that the Alagnas' request for intervention lacked factual support for their claimed relationship or interest, or legal support for party status. We disagree. As double cousins of A.F., the blood ties are stronger than the usual single cousin relationship. Furthermore, they are pursuing this matter at the request of the grandfather after being notified that he could not take custody of A.F. A.F.'s grandfather supported the Alagnas' petition to intervene.

DES admits that in dependency proceedings the Alagnas are eligible for placement pursuant to Ariz.Rev.Stat.Ann. ("A.R.S.") section 8–241(A)(1)(g). It asserts that this does not give them sufficient interest to intervene pursuant to Rule 24(b)(2), Arizona Rules of Civil Procedure ("ARCP").

DES relies on the case of *Bechtel v. Rose*, 150 Ariz. 68, 722 P.2d 236 (1986). In that case the mother of the child was killed when the child was six months old. DES took custody of the child pending a permanent resolution of the case. The father formally relinquished his parental rights to the child, leaving the child in effect parentless. Thereafter, the grandmother filed a motion to intervene pursuant to Rule 24(B), ARCP. The motion to intervene was denied. The supreme court reversed the trial court, holding that the grandmother had the right to intervene in dependency proceedings. DES asserts that this ruling only applies to grandparents and does not extend to second cousins. We disagree.

The supreme court pointed out that in Arizona, grandparents are eligible to be considered as guardians of their dependent grandchildren pursuant to A.R.S. section 8–241(A)(1)(g). Pursuant to said section, second cousins are also eligible to be considered as guardians for a dependent cousin. In *Bechtel*, the court said:

It is well settled in Arizona that Rule 24 "is remedial and should be liberally construed with the view of assisting parties in obtaining justice and protecting their rights." *Mitchell v. City of Nogales*, 83 Ariz. 328, 333, 320 P.2d 955, 958 (1958). *Under this liberal standard, "the intervenor-by-permission does not even have to be a person who would have been a proper party at the beginning of the suit...."* *Usery v. Brandel*, 87 F.R.D. 670, 677 (W.D.Mich.1980), citing 7A C. Wright and A. Miller [and M. Kane], *Federal Practice and Procedure* § 1911, at 539. When determining whether permissive intervention should be granted, the trial court must first decide whether the statutory conditions promulgated in Rule 24(b)(1) or 24(b)(2) have been satisfied. If any of the conditions for intervention have been satisfied, then the trial court may consider other factors in making its decision:

"These relevant factors include the nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable rela-

tion to the merits of the case. The court may also consider whether changes have occurred in the litigation so that intervention that was once denied should be reexamined, whether the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." [Emphasis added.]

*Spangler v. Pasadena City Bd. of Education,* 552 F.2d 1326, 1329 (9th Cir.1977) (footnotes omitted).

In this case, the Alagnas seek to intervene in order to be kept abreast of the developments in this case. Intervention does not mean that they would necessarily be entitled to placement. The plan is to return A.F. to the mother if she can be rehabilitated. The Alagnas deny that they were seeking to interfere with the plan to return the child to the mother if she rehabilitates enough to merit the return within a reasonable time. The trial judge apparently believed the Alagnas. However, the mother has had a long history of instability and irresponsibility. Her older child is in the custody of the grandfather as a dependent child. In the memorandum filed with the petition for special action by the petitioner on February 4, 1992, the petitioner stated, "Although the mother's participation in the dependency has been minimal, she has recently expressed a renewed interest to reunite with her child." Thus, it is very obvious that a substantial period of time elapsed after the dependency petition was filed on April 30, 1991, before the mother showed any interest in reuniting with her child. Therefore, her ability and real desire to rehabilitate remain to be seen and are very questionable. Thus, it is important to have a relative as a party in this case to assure that the attempted rehabilitation is not allowed to extend over a period of time sufficient to allow A.F. to become bonded to the foster parents. In this connection, our supreme court in *Bechtel* said:

> We emphasize that intervention merely allows the grandparents to be heard; it does not confer any right to custody upon them. That decision remains the province of the trial judge. Nor do we necessarily limit our decision today solely to grandparents; *other relatives might also be accorded intervention should the need and propriety of their intervention be demonstrated.* [Emphasis added.]

150 Ariz. at 73 n. 3, 722 P.2d at 241 n. 3.

The supreme court did not limit the right of intervention to grandparents. We opine that the need and propriety of the Alagnas' intervention has been demonstrated pursuant to the *Bechtel* criteria.

DES mistakenly relies on *In the Matter of Juvenile Action No. JS–7135,* 155 Ariz. 472, 747 P.2d 633 (App.1987). In that case, the juvenile court refused to permit a child's grandparents to intervene in a termination of parental rights action brought by the natural mother against their son, the natural father. Both parents were living and parties to the action. The court stated:

> [T]he termination statutes do not confer an unconditional right to intervene upon grandparents. Specifically, A.R.S. § 8–531(12) states that the term "parties" to a termination action "includes the child and the petitioners." The grandparents are not the petitioners in this action. However, this definition of "parties" is not exclusive in nature, as shown by the presence of the word "includes," rather than some other word of exclusion. Other potential parties are identified in A.R.S. § 8–535(A) (Supp.1987), which requires that notice of a termination action be given to:
>
> the parents of the child, the guardian of the person of the child, the person having legal custody of the child, any individual standing in loco parentis to the child and the guardian ad litem of any party as provided for service of process in civil actions.

155 Ariz. at 474, 747 P.2d at 635.

**30**

The court held that the definition of "parties" in termination proceedings does not include grandparents. The grandparents asserted that their potential visitation rights would be cut off if their son's parental rights were terminated. The court held that only adoption would cut off visitation rights. The court stated that unlike *Bechtel*, this was not a dependency proceeding but a termination of parental rights action, and the state was not a party. The ruling in *Juvenile Action No. JS–7135* applies only to termination of parental rights and not to dependency proceedings.

The trial court did not abuse its discretion in allowing the Alagnas to intervene. Jurisdiction accepted; relief denied.

KLEINSCHMIDT and GARBARINO, JJ., concur.