965 P.2d 1224

**WILLIAM Z. and Caryle Z., Appellants,**

v.

**ARIZONA DEPARTMENT OF ECO-
NOMIC SECURITY, Linda Z., Jo-
seph Z., and John Z., Appellees.**

No. 1 CA–JV 97–0245.

Court of Appeals of Arizona,
Division 1, Department A.

Oct. 6, 1998.

Grant Woods, Attorney General by Mara
N. Schantz, Assistant Attorney General,
Phoenix, for Appellees.

MacLean & Jacques, Ltd. by Macre S.
Inabinet, Phoenix, for Appellants.

OPINION

TOCI, Judge.

¶ 1 William Z. and Caryle Z., the paternal grandfather and step-grandmother of three minor grandchildren, appeal the denial of their motion to intervene in their grandchildren's dependency action. We conclude that this case is controlled by *Bechtel v. Rose*, 150 Ariz. 68, 722 P.2d 236 (1986). Because the trial court erred in summarily denying the motion to intervene, we reverse.

## I. FACTS AND PROCEDURAL HISTORY

¶ 2 In September 1994, Olivia Z., paternal grandmother of the three minor children, ages seven, six, and three [1] at that time, filed a dependency petition, alleging that the children's biological parents were unable to care for them. At the time the dependency action was filed, the children were living with Olivia with the consent of their parents. In her petition, Olivia sought to retain temporary custody of the children. She alleged that the parents were unable to care for the children "due to lack of financial ability, abusive and neglectful behaviors and drug addiction." The juvenile court adjudicated the children dependent as to both parents on November 1, 1994.

¶ 3 Since the dependency adjudication, the children have been in the continuous physical custody of Olivia and have had "open and frequent visitation" with William and Caryle. The juvenile court has retained jurisdiction over the case [2] and has ordered the Foster Care Review Board ("FCRB") to "review this matter at least every six months as long as the children remain in out-of-home care." Because the children, Olivia, William, Caryle, and, apparently, the parents of the children, have all lived in Virginia since the 1994 dependency adjudication, Arizona authorities have been hampered in their ability to effectively monitor the case.

¶ 4 In October 1995, the FCRB recommended that the case plan be changed from "return to parent" to "permanent relative guardianship" due to the lack of progress the parents had made towards the stated case goals. Although this recommendation was repeated in later FCRB reports, the first notice of a change in case plan by the juvenile court appears in a minute entry dated May 9, 1997. The minute entry identifies the case plan as: "Adoption by Maternal [sic] Grandmother." The Arizona Department of Economic Security ("ADES") later instituted separate severance proceedings against the parents, but such proceedings are not part of this record.

¶ 5 William and Caryle filed their verified motion to intervene in the dependency action on September 25, 1997. In their motion, they alleged that Olivia was an unfit guardian for the children. They asserted that they would be more suitable guardians and that they desired to permanently adopt the children. In his response, the children's father stated that he had no objection to the intervention. ADES objected to the intervention, however, and denied the allegation that Olivia was unfit. ADES asserted that allowing intervention by William and Caryle would confuse and delay the dependency proceedings and would therefore not serve the children's best interests. The juvenile court then denied the motion without explanation, and William and Caryle appealed.[3]

## II. DISCUSSION

¶ 6 William and Caryle assert that the Arizona Rules of Civil Procedure and Arizona case law concerning intervention support their motion, either as intervenors "of right" or as permissive intervenors. *See* Ariz. R. Civ. P. ("Rules") 24(a)(2) and 24(b). ADES responds that neither the intervention rules

---

1. At least three different birth dates are attributed to the youngest child in the record, all in either 1991 or 1992.

2. The father unsuccessfully attempted to transfer jurisdiction from Arizona to Virginia.

3. Initially, the court summarily denied the motion in an unsigned minute entry filed November 4, 1997, and William and Caryle then filed their notice of appeal. This court, however, suspended the appeal pending entry of a signed order as required by Rule 25(a), Arizona Rules of Procedure for the Juvenile Court. Such signed order was filed and the appeal reinstated.

nor case law confers on William and Caryle the right to intervene and that their motion was untimely. As a preliminary matter, we first discuss whether the Arizona Rules of Civil Procedure governing intervention apply to a dependency proceeding.

## A. Applicability of the Arizona Rules of Civil Procedure

¶ 7   The Arizona Rules of Procedure for the Juvenile Court do not expressly incorporate the Arizona Rules of Civil Procedure or the intervention rules in particular.[4] Several Arizona cases, however, have construed Rules 24(a) and 24(b) in the context of intervention in juvenile court proceedings. *See Bechtel*, 150 Ariz. at 72–73, 722 P.2d at 240–41; *Arizona Dep't of Econ. Sec. v. Superior Court (Alagna)*, 173 Ariz. 26, 28–29, 839 P.2d 446, 448–49 (App.1992); *Juvenile Action No. JS–7135*, 155 Ariz. at 473–76, 747 P.2d at 634–37. *Cf.* Ariz. R.P. Juv. Ct. 23 ("In all cases not provided for by rules, the juvenile court may regulate its practice in any manner not inconsistent with these rules. . . ."). We do the same here.

## B. Timeliness

¶ 8   Rules 24(a) and 24(b) each provide for intervention "[u]pon timely application."[5] ADES argues that because William and Caryle knew of the dependency action for nearly three years prior to filing their motion to intervene, their motion is untimely.

¶ 9   We review rulings on timeliness of motions to intervene for a clear abuse of the trial court's discretion. *Winner Enter-*

*prises, Ltd. v. Superior Court*, 159 Ariz. 106, 109, 765 P.2d 116, 119 (App.1988). Although the juvenile court did not state its reasons for denying the motion to intervene, the court indicated that it had considered all of the pleadings pertaining to the motion, including the responses and the reply. Because the trial court apparently ruled on the merits, we conclude that it implicitly found the motion to be timely.

¶ 10   William and Caryle explain their delay in filing the motion to intervene by calling attention to the change in case plan from "return to parent" to "permanent relative adoption" by Olivia. They claim that they moved to intervene as soon as it appeared that Olivia would become the children's adoptive parent. Because of the substantial change in the case plan that prompted William and Caryle to belatedly move to intervene, we find no abuse of discretion in the juvenile court's implicit assessment that the motion to intervene was timely. *See id.* (applying a "practical," case-by-case approach to determine the timeliness of a motion to intervene).

## C. Applicability of *Bechtel*

¶ 11   To determine whether the trial court properly denied the motion to intervene, we turn to our supreme court's holding in *Bechtel*, 150 Ariz. 68, 722 P.2d 236. There, the child's mother had died and the child's father had formally relinquished his parental rights, leading to what the court referred to as the child's "parentless" status. *Id.* at 70, 722 P.2d at 238. The court emphasized the

---

**4.**  We reach this conclusion despite language to the contrary in *Maricopa County Juvenile Action No. JS–7135*, 155 Ariz. 472, 474, 747 P.2d 633, 635 (App.1987) ("[Ariz.R. Civ. P. 24(a)] is expressly made applicable to juvenile cases by Rule 29, Arizona Rules of Procedure for the Juvenile Court."). Our review of the present relevant rules reveals no such express incorporation.

**5.**  Rule 24(a) provides:

**Intervention of Right.**  Upon timely application anyone shall be permitted to intervene in an action:

. . . .

(2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so

situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Rule 24(b) provides:

**Permissive Intervention.**  Upon timely application anyone may be permitted to intervene in an action:

1.  When a statute confers a conditional right to intervene.

2.  When an applicant's claim or defense and the main action have a question of law or fact in common.

In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

importance of preserving family "integrity," and "obviat[ing] the need for a non-familial placement" of the child. *Id.* at 73, 722 P.2d at 241. *Bechtel* creates a presumption in favor of permissive intervention by grandparents in a case in which the children are otherwise "parentless," absent a showing that intervention would be contrary to the child's best interests. *Id.* at 72–73, 722 P.2d at 240–41.[6]

¶ 12 ADES argues that since the children are not "parentless"—both biological parents are living and neither has relinquished parental rights—and since the children are already in the custody of a relative, the rationale in *Bechtel* does not apply. We disagree. For the following reasons, we fail to see a meaningful distinction between the "parentless" child in *Bechtel* and the children in this case.

¶ 13 First, although *Bechtel* may be narrowly viewed as a case about grandparents' rights, it is fundamentally a case about the best interests of the child. *Id.* at 72–74, 722 P.2d at 240–42. The court harmonized this guiding principle with the notion of grandparents' rights and the inherent desirability of preserving family ties and concluded: "[G]randparents, who are invested with a natural and abiding love for their grandchildren, should be allowed to intervene in the dependency process unless a specific showing is made that the best interest of the child would not be served thereby." *Id.* at 73, 722 P.2d at 241. *See also Juvenile Action No. JS–7135*, 155 Ariz. at 476, 747 P.2d at 637 (expressing "particular[ ] concern[ ]" that the juvenile court exercise its discretion" in ruling on motions to intervene "in a manner which will preserve and further the best interest of the child").

¶ 14 In keeping with this principle, we focus on the welfare of the children, giving only secondary consideration to the remaining interested parties. The record reveals little about the children's current condition and the propriety of the temporary placement with Olivia. We glean from the record, however, that since a 1995 home study apparently conducted by Virginia authorities, no neutral third party has seen the children or visited the home in which the children have lived. Contact between the FCRB and Olivia has been by telephone and by mail.

¶ 15 Under these circumstances, we conclude that the intervention by William may well serve the children's best interests. A grandparent who is a resident of the same state as the children and who has enjoyed access to the children is in a position to "shed valuable light" on the best placement for them. *See Bechtel*, 150 Ariz. at 73, 722 P.2d at 241. Further, as we must, we "accept as true" the allegations made by William and Caryle in their motion to intervene, *id.* at 74, 722 P.2d at 242 (quoting *Saunders v. Superior Court*, 109 Ariz. 424, 425, 510 P.2d 740, 741 (1973)), that the current placement of the children with Olivia is contrary to the children's best interests.

¶ 16 Second, ADES's reliance on *Juvenile Action No. JS–7135* to distinguish *Bechtel* is unpersuasive. Although this court affirmed the denial of a motion to intervene by the child's grandparents in *Juvenile Action No. JS–7135*, 155 Ariz. at 476, 747 P.2d at 637, it did so where both parents were before the court. The court justified its denial of the grandparents' intervention as follows:

¶ 17 [T]he child at the vortex of this controversy is not parentless or in any way "bereft of family." Both parents are living. Both continue to have parental rights and obligations to the child. Moreover, both parents and even the child have attorneys and are present in this action. None of these facts were present in *Bechtel.*

. . . .

---

**6.** The court in *Bechtel* did not limit its holding to grandparents. "[O]ther relatives might also be accorded intervention should the need and propriety of their intervention be demonstrated." 150 Ariz. at 73 n. 3, 722 P.2d at 241 n. 3.

We note that Caryle is related to the children by marriage only. The parties to this appeal make no distinction between the rights she may enjoy as "step-grandmother" or as the spouse of the paternal grandfather and those rights enjoyed by the "blood" grandparents, including both William and the children's current physical custodian, Olivia. We proceed with our analysis on the assumption that William's status as grandparent brings us within the holding in *Bechtel*, and express no opinion as to whether Caryle should be treated differently from a blood relative.

This concern [in *Bechtel*] for the preservation of natural family ties is fully satisfied in this case by the presence of both parents. Since the parents themselves are the litigants here, there is no issue nor even the suggestion of a non-familial placement of the child.

*Id.*

¶ 18   Here, the parents cannot satisfy the *Bechtel* concern for preservation of natural family ties. The mother has not actively participated in the dependency, or indeed in the lives of the children, for years. The father has, through counsel, indicated his willingness to permanently relinquish his paternal rights to the children in favor of his father, William. Most important, because both parents exhibited little progress toward case goals, ADES has begun proceedings to sever their parental rights altogether.

¶ 19   Additionally, the would-be intervenors in *Juvenile Action No. JS–7135* had already been parties to "extended, bitterly contested, intrafamilial litigation which borders on outrageousness" and a related custody dispute that had lasted nine years. *Id.* The court denied the grandparents' motion to intervene out of concern for the "undue delay and complication [that would] result, with resulting prejudice to the child." *Id.* None of these facts, central to the outcome in *Juvenile Action No. JS–7135*, are present here.

¶ 20   Finally, the application of the *Bechtel* rationale here is supported by this court's holding in *Arizona Department of Economic Security*, 173 Ariz. 26, 839 P.2d 446. There, we upheld the intervention in a dependency action of two cousins where the parents of the child were living, neither having relinquished parental rights. We concluded that the "need and propriety of the [cousins'] intervention has been demonstrated pursuant to the *Bechtel* criteria." *Id.* at 29, 839 P.2d at 449.

**D.   Summary Denial of Motion to Intervene**

■   ¶ 21   In *Bechtel,* as in this case, the juvenile court summarily denied the grandparents' motion to intervene in a dependency action, leaving the reviewing court with "no indication at all as to why the motion was denied." 150 Ariz. at 72, 722 P.2d at 240. Our supreme court concluded that the juvenile court had abused its discretion by summarily denying the petitioner's motion to intervene. *Id.* In so concluding, the court identified an obligation of the juvenile court to make an individualized determination on the record:

> [G]randparents should be allowed to intervene in their parentless grandchildren's dependency proceedings unless it would not be in the child's best interest.
>
> . . . .
>
> Before ruling on a motion to intervene, the juvenile court should consider and weigh the relevant factors identified today, and only if they show that intervention would not be in the best interest of the child should intervention be denied. *Because there is no evidence that the juvenile court made an individualized determination of the petitioner's motion to intervene based upon the rule enunciated today, we must conclude that the juvenile court abused its discretion by summarily denying intervention.*

*Id.* at 74, 722 P.2d at 242 (emphasis added).

¶ 22   The record in this case reveals no such individualized determination explaining the juvenile court's denial of William's and Caryle's motion to intervene. This omission constituted an abuse of the court's discretion as a matter of law.

### III.   CONCLUSION

¶ 23   We vacate the juvenile court's order denying William's and Caryle's motion to intervene and remand this case so that the trial court may reconsider the motion in accordance with this opinion. In so ruling, we express no opinion as to the fitness of William and Caryle or Olivia to care for these children.

GARBARINO, P.J., and GERBER, J., concur.