IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

FEB -8 2007

COURT OF APPEALS
DIVISION TWO

GRACE HOWARD ALLEN,                )
                                   )
                    Petitioner,    )
                                   )
        v.                         )
                                   )        2 CA-SA 2006-0101
HON. JAVIER CHON-LOPEZ, Judge      )        DEPARTMENT B
Pro Tempore of the Superior Court of the )
State of Arizona, in and for the County of )      O P I N I O N
Pima,                              )
                                   )
                    Respondent,    )
                                   )
        and                        )
                                   )
ARIZONA DEPARTMENT OF              )
ECONOMIC SECURITY and T.S.A.,      )
                                   )
        Real Parties in Interest.  )
                                   )

SPECIAL ACTION PROCEEDING

Pima County Cause No. J169258

JURISDICTION ACCEPTED; RELIEF GRANTED

Scott E. Myers                                        Tucson
                                        Attorney for Petitioner

Suzanne Laursen                                      Tucson
                                           Attorney for Minor

Terry A. Goddard, Arizona Attorney General                    Tucson
  By Claudia Acosta Collings                 Attorneys for Real Party in Interest

David M. Lujan                                                  Phoenix
                                                 Attorney for Amicus Curiae
                                                 Justice for Children-Arizona

BRAMMER, Judge.

¶1        In this special action, petitioner Grace Allen challenges the respondent judge's denial of her motion to intervene in the underlying dependency proceeding of T., a minor child and Allen's nephew. Because Allen has no "equally plain, speedy, and adequate remedy by appeal," we accept special action jurisdiction. Ariz. R. P. Spec. Actions 1(a), 17B A.R.S.; *see Bechtel v. Rose*, 150 Ariz. 68, 71-72, 722 P.2d 236, 239-40 (1986) (accepting special action jurisdiction of denial of motion to intervene); *J.A.R. v. Superior Court*, 179 Ariz. 267, 273, 877 P.2d 1323, 1329 (App. 1994) (same). We conclude that the respondent judge abused his discretion and grant relief. Ariz. R. P. Spec. Actions 3(c).

## Factual and Procedural Background[1]

¶2        T. was born September 23, 2003 to Karen A. and Carl R. When T. was one week old, Karen left him with his maternal uncle, Marlon Allen, and Allen, Marlon's

---

[1]Allen's petition for special action does not comply with Rule 7(e), Ariz. R. P. Spec. Actions, 17B A.R.S., because it contains no citations to the record. We have therefore disregarded Allen's statement of facts, *see Flood Control District of Maricopa County v. Conlin*, 148 Ariz. 66, 68, 712 P.2d 979, 981 (App. 1985), and have instead relied on the Arizona Department of Economic Security's statement of facts and our review of the record.

"significant other," then named Grace Howard.[2] Allen filed a dependency petition in April 2004, requesting she and Marlon Allen be given physical custody of T. By July 2004, T.'s parents had signed documents consenting to Allen's and Marlon's adoption of T. Allen and Marlon then moved to dismiss the dependency petition. In August 2004, the juvenile court granted the motion and awarded temporary custody of T. to Allen and Marlon. Although Allen and Marlon have not yet adopted T., they retained temporary custody of him until August 10, 2006.

¶3        On August 4, 2006, Allen was taken by ambulance to a hospital after expressing suicidal ideation and using "a large amount of cocaine and alcohol." Allen's subsequent psychiatric evaluation stated she "ha[d] a history of cocaine and alcohol use which ha[d] been in remission for many years." Allen reported she had a long history of depression that had recently worsened because of marital and financial stress. The evaluation recommended that Allen remain hospitalized for five to seven days "for safety, stabilization and diagnostic clarification."

¶4        While Allen was hospitalized, Child Protective Services (CPS) "received a report alleging that [T. was] at risk due to his living environment and the adults providing care for him." Allen was apparently released on August 10, the same day CPS removed T.

---

[2]Allen asserted in her 2004 dependency petition that she was T.'s aunt. The 2004 Child Protective Services report to the juvenile court stated Allen and Marlon "ha[d] been in a committed relationship for approximately eighteen years" and "intend[ed] to marry soon." Allen and Marlon apparently married "during the dependency in 2004."

from her and Marlon's home and placed him in a group home. The following day, Karen and Carl signed documents consenting to Allen's adoption of T.

¶5         Real party in interest the Arizona Department of Economic Security (ADES) filed a dependency petition on August 15, alleging that "[a]t the present time no adult in [T.'s] home is appropriately caring for [him]." The CPS report to the juvenile court stated Karen and Carl, T.'s biological parents, were living in Marlon's and Allen's home, as was another adult. The report alleged that T.'s parents and the other adult were drug abusers. Allen and Marlon admitted to the CPS investigator "their home environment was a poor one," that "Marlon has a drinking and domestic violence problem," that Allen "has depression and mental instability," and that, although T.'s "biological parents are not suitable parents," Marlon and Allen "let the parents live in their home and care for [T.] []alone." The report further stated Allen and Marlon had not proceeded with T.'s adoption because Allen feared she would not pass "the social history portion of the adoption study" and that Marlon "didn't want to spend the money necessary for the adoption."

¶6         Allen filed a motion to intervene in the dependency on August 17. Before ruling on that motion, the respondent judge adjudicated T. dependent as to his parents, awarded legal custody of T. to ADES, and ordered that T. "remain in his current placement" at the group home. The respondent judge subsequently denied Allen's motion to intervene despite requesting that ADES "consider [Allen] as a possible placement for [T.] if [she] meets the regular requirements for placement."

¶7 On September 6, CPS referred Allen "for a home study" regarding placement but "ruled out" Allen and Marlon "as a possible placement for T." on September 11, apparently because Allen "did not meet the preliminary requirements for placement." In its report to the juvenile court for the permanency hearing, CPS recommended that Karen's and Carl's parental rights be terminated and that T. not be placed with Allen. The report enumerated concerns about Allen's and Marlon's "failure to protect [T.] from his biological parents, from the domestic violence in the home, and from the drug-using roommate." The report also cited "their failure to seek/provide placement for [T.], their risk of substance abuse, the unstable home environment, and unresolved mental issues" as additional concerns.

¶8 The respondent judge held a permanency hearing on October 6, finding "the most appropriate plan for [T.] is severance and adoption," and ordered ADES to file a motion to terminate Karen's and Carl's parent-child relationship. Allen filed a second motion to intervene that same day. She included with the motion an Arizona's Children Association's adoptive home study that recommended Allen "be certified as acceptable to adopt." The study noted Allen had "moved to an apartment where she can live alone with [T.,] ha[d] filed for divorce and wants to adopt as a single parent, [and that] Marlon ha[d] agreed to that plan." After a hearing, the respondent judge denied Allen's motion on November 1. This petition for special action followed.

**Discussion**

¶9        Allen sought to intervene in the dependency proceeding pursuant to Rule 24(b), Ariz. R. Civ. P., 16 A.R.S., Pt. 1.[3] "When determining whether permissive intervention should be granted, the trial court must first decide whether the statutory conditions promulgated in Rule 24(b)(1) or 24(b)(2) have been satisfied." *Bechtel v. Rose*, 150 Ariz. 68, 72, 722 P.2d 236, 240 (1986). "It is well settled in Arizona that Rule 24 'is remedial and should be liberally construed with the view of assisting parties in obtaining justice and protecting their rights.'" *Id.*, *quoting Mitchell v. City of Nogales*, 83 Ariz. 328, 333, 320 P.2d 955, 958 (1958). We review the respondent judge's denial of Allen's motion to intervene for an abuse of discretion. *See id.; see also Speer v. Donfeld*, 193 Ariz. 28, ¶ 9, 969 P.2d 193, 196 (App. 1998) (trial court abuses its discretion if it "base[s] its ruling on an error of law"). ADES contends Allen has not met the threshold requirement of Rule 24(b)(2) that the "applicant's claim or defense and the main action have a question of law or fact in common."

¶10       In *Bechtel*, our supreme court determined that a child's grandparents "should be allowed to intervene in the dependency process unless a specific showing is made that the best interest of the child would not be served thereby." 150 Ariz. at 73, 722 P.2d at 241. The supreme court noted that, under former A.R.S. § 8-241(A)(1)(g), "[g]randparents are among

_____

[3]This appears to be the procedure contemplated by Rule 37(A), Ariz. R. P. Juv. Ct., 17B A.R.S., which includes in its definition of parties "any person or entity who has been permitted to intervene pursuant to Rule 24, Ariz. R. Civ. P." *See also William Z. v. Ariz. Dep't of Econ. Sec.*, 192 Ariz. 385, ¶ 7, 965 P.2d 1224, 1226 (App. 1998) ("Several Arizona cases . . . have construed Rules 24(a) and 24(b) in the context of intervention in juvenile court proceedings.").

6

those people eligible to become guardian of a child found to be dependent." *Bechtel*, 150 Ariz. at 73, 722 P.2d at 241. The statute permitted the juvenile court to place a child with "maternal or paternal relatives, as guardian of the person, provided they are physically and financially able to provide proper care." 1986 Ariz. Sess. Laws, ch. 334, § 3.

¶11 Similarly, the current version of that statute permits the juvenile court to award a dependent child "to a grandparent or another member of the child's extended family including a person who has a significant relationship with the child." A.R.S. § 8-845(A)(2). ADES does not dispute that Allen falls within this category. Clearly, if a child's grandparents' interest in the dependency proceeding is sufficient for Rule 24(b)(2) purposes, so is Allen's. She is T.'s maternal aunt and T. had been in her custody for most of his life. And, although T. is not "parentless" like the child in *Bechtel*, 150 Ariz. at 70, 722 P.2d at 238, T.'s parents have consistently avoided their parental obligations. Indeed, their parental rights are now the subject of a severance proceeding. Like the grandparents in *Bechtel*, Allen is eligible to be awarded permanent custody of T. And, the supreme court explicitly stated in *Bechtel* that its ruling was not "necessarily limit[ed] . . . solely to grandparents." 150 Ariz. at 73 n.3, 722 P.2d at 241 n.3; *see also Arizona Dep't of Econ. Sec. v. Superior Court*, 173 Ariz. 26, 27, 839 P.2d 446, 447 (App. 1992) (applying *Bechtel* to second cousins seeking to intervene in minor child's dependency action). Accordingly, we conclude Allen's eligibility to have T. placed with her meets the requirement of Rule 24(b)(2).

¶12 If the conditions of Rule 24(b) are met, as they are here, then the juvenile court must determine whether the party opposing intervention has made a sufficient showing that

intervention is not in the child's best interest. *See Bechtel*, 150 Ariz. at 73, 722 P.2d at 241

("[G]randparents . . . should be allowed to intervene in the dependency process *unless a*

*specific showing is made* that the best interest of the child would not be served thereby.")

(emphasis added). The supreme court in *Bechtel* concluded that "[b]efore ruling on a motion

to intervene, the juvenile court should consider and weigh the relevant factors identified [in

the opinion], and only if they show that intervention would not be in the best interest of the

child should intervention be denied." *Id.* at 74, 722 P.2d at 242. Those relevant factors are:

> [T]he nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the merits of the case. The court may also consider whether changes have occurred in the litigation so that intervention that was once denied should be reexamined, whether the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

*Id.* at 72, 722 P.2d at 240, *quoting Spangler v. Pasedena City Bd. of Educ.*, 552 F.2d 1326,

1329 (9th Cir. 1977) (footnotes omitted in *Bechtel*).

¶13        In his minute entry denying Allen's motion to intervene, the respondent judge

stated:

> Under the facts of this case, the Court finds that allowing Grace Allen to intervene would be adverse to [T.'s] best interest. At this time, [T.] deserves a safe, secure and permanent placement. Ms. Allen had ample opportunity to provide such a placement for him. During the last four months, Ms. Allen's severe personal problems, both mental and emotional, directly impacted [T.'s] safety, security, and permanency. [T.] will derive no

8

> affirmative benefit if this Court allows Ms. Allen to intervene at this late date.

(Footnote omitted). The respondent judge also noted neither Allen nor her husband had completed their contemplated adoption of T. The bulk of the respondent judge's comments, however, refer not to the *Bechtel* factors related to intervention, but instead to whether T. should be placed with Allen once Karen's and Carl's parental rights are terminated. A proper inquiry under *Bechtel* focuses not on the eventual outcome of the proceeding but rather on the effect intervention may have on the proceeding. As the court noted in *Bechtel*, intervention merely allows the party seeking intervention to be heard, "it does not confer any right to custody upon them." *Id.* at 73 n.3, 722 P.2d at 241 n.3. Although "[the custody] decision remains the province of the [juvenile court]," *id.*, it was premature for the respondent judge to make that decision in the context of a motion to intervene. Thus, it was improper for the respondent judge to deny Allen's motion to intervene on the basis that she ultimately may not be awarded permanent custody of T., rather than permitting her to litigate that issue as a party.

¶14      ADES argues "[Allen's] intervention would . . . cause[] undue delay in achieving permanency for [T.]; and [the respondent judge] considered this factor and did not summarily deny the Motion to Intervene." *See William Z. v. Ariz. Dep't of Econ. Sec.*, 192 Ariz. 385, ¶ 22, 965 P.2d 1224, 1228 (App. 1998) (summary denial of motion to intervene is abuse of discretion). The respondent judge, however, made no such finding. Accordingly, we do not assume he did, and decline to further address the issue.

9

**¶15** We appreciate, based on the current state of the record, that Allen likely faces an uphill battle to demonstrate that she is a suitable adoptive parent for T. And it is conceivable that, if Allen is ultimately permitted to intervene, more complex and lengthy litigation may result than if Allen did not seek custody. We do not agree with ADES, however, that any such delay necessarily would be undue. Allen is the only member of T.'s family who is seeking custody and has been responsible for his care since his birth.

**¶16** We accept jurisdiction of this special action and, for the reasons stated above, we conclude the respondent judge abused his discretion in denying Allen's motion to intervene. We therefore vacate the order and direct the respondent judge to reconsider Allen's motion to intervene in light of the factors our supreme court identified in *Bechtel*.[4]

_____
                                            J. WILLIAM BRAMMER, JR., Judge

CONCURRING:


_____
PETER J. ECKERSTROM, Presiding Judge

_____

[4]Justice for Children, a "non-profit child advocacy agency," requested permission to file an amicus curiae brief, which we granted. In that brief, it argues the respondent judge should have granted Allen's motion to intervene. It asserts Allen's intervention in this matter is in T.'s best interest because "any best interests determination is simply incomplete without an assessment of the psychological impact following the severance of the bond that exists between [Allen] and the child." Although Allen's and T.'s relationship is relevant to the factors our supreme court identified in *Bechtel v. Rose*, 150 Ariz. 68, 72, 722 P.2d 236, 240 (1986), whether those factors require a juvenile court to permit a party to intervene is left to the court's discretion. *Id.* Because the respondent judge did not consider the *Bechtel* factors, we do not reach the merits of Justice for Children's argument.

E S P I N O S A, Judge, dissenting.

¶17        I refrain from joining the majority decision because, as the majority acknowledges, our standard of review is abuse of discretion, *Mitchell*, 83 Ariz. 328, 333, 320 P.2d 955, 958, and there is ample justification supporting the respondent judge's decision to deny Allen's motion to intervene in this dependency proceeding.  In my view, the majority erroneously assumes the respondent ignored relevant factors and then substitutes its own judgment to conclude the juvenile court abused its discretion, something beyond our proper purview.  Therefore, I respectfully dissent.

¶18        The courts in *Bechtel* and *William Z.*, cited by the majority, found abuses of discretion in the denial of intervention, but only when the trial courts had summarily denied the motions without addressing relevant factors.  When reviewing a juvenile court's discretionary decisions, we will uphold its rulings if there is evidence to support them.  *See Leslie C. v. Maricopa County Juvenile Court*, 193 Ariz. 134, 135, 971 P.2d 181, 182 (App. 1997).  And appellate courts will infer a trial court has made any findings supportable by the record that are necessary to sustain its judgment.  *See Elliott v. Elliott*, 165 Ariz. 128, 135, 796 P.2d 930, 937 (App. 1990).  "We do not re-weigh the evidence on review." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, ¶ 12, 53 P.3d 203, 207 (App. 2002).

¶19        At the outset, it is not clear, contrary to the majority's conclusion, that Allen "is eligible to be awarded permanent custody."  Although the majority refers to Allen as T.'s "maternal aunt," the relationship exists only through Allen's marriage to T.'s maternal uncle. The record reflects Allen claims to have begun the process of dissolving that marriage, and

11

when that is complete, Allen will no longer have a legal relationship to T., and obviously has no blood relationship to him. Even absent the dissolution proceedings, it is unclear whether a relative only by marriage even falls within the holding of *Bechtel*. *See William Z. v. Ariz. Dep't of Econ. Sec.*, 192 Ariz. 385, 388 n.6, 965 P.2d 1224, 1227 n.6 (App. 1998) ("We proceed with our analysis on the assumption that William's status as grandparent brings us within the holding of *Bechtel*, and express no opinion as to whether Caryle should be treated differently from a blood relative."). *Bechtel*, *Arizona Department of Economic Security*, 173 Ariz. at 27, 839 P.2d at 447, and *In Re Maricopa County Juvenile Action No. JS-7135*, 155 Ariz. 472, 476, 747 P.2d 633, 637 (App. 1987), all involved blood relatives who sought intervention in various custody proceedings. As the *Bechtel* court stated: "It has been repeatedly emphasized that 'courts should bend over backwards, if possible, to maintain the natural ties of birth.'" 150 Ariz. at 73, 722 P.2d at 241, *quoting Anonymous v. Anonymous*, 25 Ariz. App. 10, 11, 540 P.2d 741, 742 (1975).

¶20 Second, while the majority seems to focus on "assisting [Allen] in obtaining justice and protecting [her] rights," as a non-parent, and in the foreseeable future, a non-relative, Allen has little, if any, legal interest to be protected in this case. Allen could adopt T. without being a party in the dependency case, which, indeed, is the most common avenue for adoptive parents. The majority's decision suggests any long-term foster parent or temporary custodian who has a child removed from their care should, and under its reasoning, would be permitted to intervene in the dependency case. *Cf. Bechtel*, 150 Ariz. at 74, 722 P.2d at 242 ("However, we do not hold that mere eligibility for consideration [as guardians] automatically confers a right to intervene in dependency proceedings."). Thus,

the first two *Bechtel* factors clearly support the respondent judge's ruling and it should not be assumed he failed to consider them. *See Elliot*; *see also Fuentes v. Fuentes*, 209 Ariz. 51, ¶ 18, 97 P.3d 876, 880-81 (App. 2004) (appellate court presumes trial court considered all evidence in reaching its decision).

¶21 The undue delay factor noted in *Bechtel* was *expressly* considered by the respondent when he specifically found: "[T.] will derive no affirmative benefit if this Court allows Ms. Allen to intervene at this late date." For the majority to disregard the added delay that Allen's intervention would likely inject into the case ignores the sweeping changes in the dependency statutes since *Bechtel* and the other cited cases were decided, implementing the "Model Court" program and creating a statutory mandate that the juvenile court hold a permanency hearing "within twelve months after the child is removed" and determine "the most appropriate plan for the child and shall order the plan to be accomplished within a specified period of time." A.R.S. § 8-862(A)(2); (B)(1). It is difficult to see the logic in allowing Allen to intervene and delay the proceedings for the purpose of seeking custody of a child recently removed from her care by Child Protective Services, which required probable cause to show T. was "a victim or [would] imminently become a victim of abuse or neglect," or "suffering serious physical or emotional injury that can only be diagnosed by a medical doctor or psychologist." A.R.S. § 8-821(B)(1) and (2). Courts "must be mindful [when] dealing with the care and custody of a very young child and vigilant to protect his right to a suitable and speedy placement." *Bechtel*, 150 Ariz. at 71, 722 P.2d at 239. In intervention cases, the juvenile court must "exercise its discretion in a manner which will preserve and

13

further the best interest of the child, avoiding delay and prejudice to the child at all costs." *Maricopa County No. JS-7135*, 155 Ariz. at 476, 747 P.2d at 637.

¶22 Most problematic, however, is the majority's glossing over the respondent judge's concerns for the child and the ample basis for that concern, both factual and legal. The majority criticizes the respondent for focusing on the "eventual outcome" for T., rather than "the effect of intervention on the proceedings." But, in my view, the respondent got it exactly right. Not only is "'the legal position [the intervenor] seek[s] to advance and *its probable relation to the merits of the case*'" another express *Bechtel* factor, 150 Ariz. at 72, 722 P.2d at 240 (emphasis added), *quoting Spangler*, 552 F.2d at 1329, but the overarching rule guiding a court's judgment is that "the best interest of the child shall govern." *Bechtel*, 150 Ariz. at 73, 722 P.2d at 241; *see also William Z.*, 192 Ariz. 385, ¶ 14, 965 P.2d at 1227 ("We focus on the welfare of the children, giving only secondary consideration to the remaining interested parties.").

¶23 If the child's welfare is the point of the proceeding, Allen's intervention is, at best, questionable. After T. had been removed from the dangerous environment in which Allen had left him, CPS, at the respondent's request, investigated the possibility of returning T. to Allen's custody and concluded that doing so was not appropriate. There is ample evidence to support that conclusion, including Allen's "emotional meltdown" requiring hospitalization, relapse into cocaine abuse, alcohol abuse, long-term and ongoing marital difficulties, and the domestic violence and drug abuse T. was exposed to under Allen's care. Equally troubling is Allen's assertion the adoption was never completed due to concerns about "pass[ing] the adoption study." Because Allen worked in the Adoptions unit of the

14

County Attorney's office, the respondent judge could expect her to have a realistic view of the circumstances that likely would result in rejection of a petition to adopt. All of this information was before the respondent and he could reasonably find Allen now merely seeks a "do-over" to return her to the custodial position she had abdicated through the combination of her inaction, irresponsible behavior, and dangerous neglect of T., regardless of applicable time constraints and the needs of the child.

¶24    The respondent judge expressly found "allowing Grace Allen to intervene would be adverse to [T.'s] best interest." This finding is key in his denial of Allen's motion and is supported by ample evidence, demonstrating the respondent properly exercised his discretion, notwithstanding that this court might reach a different conclusion under its own view of the facts of this case. *Jesus M.*, 203 Ariz. 278, ¶ 12, 53 P.3d at 207. I would therefore decline jurisdiction of the special action.

_____
PHILIP G. ESPINOSA, Judge