NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

MARIA S., FELICIANO R., *Appellants,*

*v.*

DEPARTMENT OF CHILD SAFETY, N.J., A.J., C.J., *Appellees.*

No. 1 CA-JV 17-0105
FILED 9-28-2017

---

Appeal from the Superior Court in Maricopa County
No. JD527290
The Honorable Janice K. Crawford, Judge

**AFFIRMED**

---

COUNSEL

Jeffrey M. Zurbriggen, P.C., Phoenix
By Jeffrey M. Zurbriggen
*Counsel for Appellants*

Arizona Attorney General's Office, Mesa
By Ashlee N. Hoffmann
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Diane M. Johnsen joined.

---

**C R U Z**, Judge:

¶1 Maria S. and Feliciano R. (collectively "Grandparents") appeal from the superior court's denial of their motion to intervene and motion to change physical custody. Because Grandparents have not shown the superior court abused its discretion, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2 Grandparents are the maternal grandparents of N.J., born in 2003, A.J., born in 2005, C.J., born in 2009, and D.S., born in 1998[1] (collectively the "Children"). The Children's mother, Benita S. ("Mother"), suffers from severe mental-health issues and cognitive disabilities that prevent her from caring for the Children. Additionally, the Children all have special needs of their own.

¶3 Because of Mother's own disabilities, she and the Children lived with Grandparents. When Grandparents took an extended trip to Mexico in late 2013, leaving the Children in Mother's care, the Department of Child Safety ("DCS") filed a dependency petition, alleging the Children were dependent as to Mother because she was unable to safely care for them or herself. Once removed from Mother's care, the Children were placed in foster homes licensed by the Division of Developmental Disabilities ("DDD") and began to receive specialized services.

¶4 After the superior court found the Children dependent as to Mother in August 2014, DCS attempted to reunify the Children with Mother, providing her with an array of reunification services. In March 2015, DCS completed its first home study for Grandparents but a potential return of the Children was denied because Mother continued to live in the home and exhibited violent tendencies. Additionally, Grandparents were

---

[1] D.S. turned eighteen in December 2016 and is not a party to this appeal.

reportedly unable to understand safety risks and the Children's special needs. DCS unsuccessfully attempted to place the Children with other relatives.

¶5            Following a petition to sever the parental relationship and an evidentiary hearing, the superior court terminated Mother's parental rights in May 2016 and the Children's fathers' rights in August 2016.[2] This Court dismissed Mother's appeal on July 8, 2016, pursuant to Arizona Rule of Procedure for the Juvenile Court 106(G)(1).

¶6            On August 17, 2016–three months after Mother's parental rights had been terminated–Grandparents filed a motion to intervene under Arizona Rule of Civil Procedure ("Rule") 24(a) and/or (b).[3] That same day, Grandparents also filed a motion to change physical custody and visitation, requesting the Children be placed with them. Grandparents' motions asserted they could address the Children's disabilities because they had addressed Mother's similar disabilities. Grandparents sought to intervene in order to gain standing in the case so they could advocate for the Children and be considered as a permanent placement.

¶7            DCS and the Children's guardian ad litem ("GAL") objected to Grandparents' motions, based on lack of standing and the best interests of the Children. They pointed out that, during the course of the case, DCS had performed a home study and on-site inspection of Grandparents' home, had continually assessed Grandparents for placement, and although Grandparents discussed finding an alternate living arrangement for Mother, Grandparents took no action to remedy the problems DCS had identified. Further, DCS and the GAL argued that Grandparents were consistently unable to understand or deal with the Children's disabilities and medical needs, and unable to interact or otherwise effectively control the Children.

¶8            Following a November 11, 2016 oral argument on Grandparents' motion to intervene, the superior court set an evidentiary hearing. Just prior to the evidentiary hearing, DCS performed a home

_____

[2]        The fathers of N.J., C.J., and A.J. are believed to reside in Mexico, have had no contact with the Children, and are not parties to this appeal.

[3]        Grandparents appeal the denial of the motion to intervene under Rule 24(b), and we therefore do not consider Rule 24(a) on appeal.

study for Grandparents, and it was denied because Mother was still residing in the home.

¶9        After taking the matter under advisement, the superior court denied Grandparents' motions to intervene and for change of physical custody, finding that allowing Grandparents to intervene would be contrary to the Children's best interests. In fact, the court voiced its "very serious concerns as to whether permitting intervention would provide the Grandparents with information that would be contrary to the [C]hildren's best interest[s]." This timely appeal followed.

¶10        The Court has jurisdiction pursuant to Arizona Revised Statutes sections 8-235(A), 12-120.21(A)(1), and 12-2101(A)(1).

## DISCUSSION

¶11        Grandparents sought permission to intervene pursuant to Rule 24(b), which provides that the court may, upon timely motion, permit intervention by one who "has a conditional right to intervene under a statute" or who "has a claim or defense that shares with the main action a common question of law or fact." Ariz. R. Civ. P. 24(b)(1). Rule 24 "is remedial and should be liberally construed with the view of assisting parties in obtaining justice and protecting their rights . . . ." *Mitchell v. City of Nogales*, 83 Ariz. 328, 333 (1958).

¶12        Grandparents were not parties to the Children's dependency and severance proceedings, however, that is not to say they lacked an interest in the proceedings. "Grandparents are among those people eligible to become guardian of a child found to be dependent" and, as such, a child's grandparents "should be allowed to intervene in the dependency process unless a specific showing is made that the best interest of the child would not be served thereby." *Bechtel v. Rose*, 150 Ariz. 68, 73 (1986); *see also* Ariz. Rev. Stat. § 8-514(B).

¶13        We review the superior court's denial of Grandparents' motion to intervene for an abuse of discretion. *See Allen v. Chon-Lopez*, 214 Ariz. 361, 364, ¶ 9 (App. 2007).

4

**¶14** *Bechtel* outlined several relevant factors which the court should consider prior to determining whether a grandparent should be allowed to intervene in a dependency matter. 150 Ariz. at 72.[4]

**¶15** On appeal, Grandparents argue the court failed to properly apply the *Bechtel* factors for intervention and cite *Chon-Lopez* for the proposition that the superior court inappropriately analyzed placement issues instead of grounds for granting intervention. In concluding that Grandparents' intervention was not in the best interests of the Children, the court cited the occasion in 2013 in which Grandparents, who were the primary caregivers of the Children, left the Children with Mother knowing, or having reason to know, that Mother was not an appropriate caregiver due to her mental capabilities. Although Grandparents underwent a home study in hopes of becoming a suitable placement for the Children, Mother, who is dependent on Grandparents, was still residing in the home. On that basis, DCS and the Children's GAL opposed Grandparents' request to serve as placement. The court further concluded "[i]ntervention is likely to result in prolonging the case."

**¶16** The court was aware DCS had assessed Grandparents as a potential placement and offered Grandparents opportunities to visit with the Children in their home with Mother. During those visits, Grandparents

---

[4] Those factors are:

> [T]he nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the merits of the case. The court may also consider whether changes have occurred in the litigation so that intervention that was once denied should be reexamined, whether the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

*Id.*

were unable to appropriately manage the Children, and the Children exhibited negative behaviors during and after the visits. The court heard testimony that DCS moved the visits to DCS offices but the Children's behaviors remained unchanged, as did Grandparents' response. The DCS case manager and DDD supervisor testified that the grandmother failed to implement any skills she had been taught to manage the Children's behaviors and that instead, did not engage with the Children. In fact, the record shows that by March 2016, visitation with the grandmother was terminated because she did not follow DCS guidelines and caused the Children to become even more disruptive. In the presence of the grandmother, the Children's behavior was frequently uncontrollable and violent, and over an extended period of time, attempts to educate the grandmother did not improve the Children's behaviors. When visitation stopped, the Children's behavior improved for the first time.

¶17 This case is dissimilar to *Bechtel* where the court found a "paucity" of a record and "no indication at all as to why the [Grandparent's] motion was denied." 150 Ariz. at 72. Here, the court did not "summarily" deny intervention, but rather made an "individualized determination" based on the best interests as required by *Bechtel*. *See William Z. v. Ariz. Dep't of Econ. Sec.*, 192 Ariz. 385, 389, ¶ 21 (App. 1998) (a summary denial of intervention is an abuse of discretion).

¶18 Grandparents argue their interests with regard to visitation and placement were not represented by any party to the case but, in fact, Mother's counsel, the GAL, and one child's attorney did do so throughout the dependency case. The superior court found Grandparents did not advance a legal position or offer any relevant legal issues not already presented by a party in the case, notwithstanding the fact that the GAL could not, in the Children's best interests, represent Grandparents' interests. Further, the court found that to allow the intervention would prolong the case.

¶19 Given the extensive record, including the Children's interactions with Grandparents, the Children's extensive history and continuing need for specialized care, and the need for permanency, Grandparents have not shown the superior court abused its discretion in denying their motion to intervene.

¶20 We address only the superior court's denial of Grandparents' motion to intervene. Grandparents were not permitted to intervene and were not otherwise parties pursuant to Arizona Rule of Procedure for the Juvenile Court 37(A), and therefore had no right to file a motion to change

physical custody and similarly now lack standing to challenge the superior court's denial of said motion.

## CONCLUSION

¶21      We affirm the superior court's rulings.



AMY M. WOOD • Clerk of the Court
FILED:  AA