NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE
# ARIZONA COURT OF APPEALS
## DIVISION ONE

STEPHANIE S.,
*Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, M.G., S.G., E.D.,
*Appellees*.

No. 1 CA-JV 21-0026
FILED 10-19-2021

Appeal from the Superior Court in Maricopa County
No. JD36277
The Honorable Pamela Hearn Svoboda, Judge

**AFFIRMED**

COUNSEL

Stephanie Swan, Phoenix
*Appellant*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Counsel for Appellee Department of Child Safety*

## MEMORANDUM DECISION

Judge David D. Weinzweig delivered the decision of the Court, in which Presiding Judge Peter B. Swann and Judge Paul J. McMurdie joined.

**W E I N Z W E I G**, Judge:

¶1        Stephanie S. ("Maternal Grandmother") appeals from the superior court's orders denying her motion to intervene, motion for emergency placement, motion for disclosure and adoption petition. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2        Tiffani D. ("Mother") is the biological mother of E.D., born in December 2015, and M.G. and S.G., twins born in March 2011 (collectively, the "Children"). E.D.'s biological father is Aaron D. ("Father").[1]

¶3        In August 2018, the Children lived with Mother and Father. On August 7, a daycare worker noticed blood on and around E.D.'s vagina. The daycare called Father, who called Maternal Grandmother, and Grandmother took E.D. to the emergency room. The child was transferred to Phoenix Children's Hospital, where doctors performed surgery to repair a laceration in E.D.'s vagina. The doctors determined the injury was caused by non-accidental, blunt force trauma or penetrating trauma in the last 24 hours.

¶4        The Department of Child Safety ("DCS") and law enforcement interviewed Mother, Father and Maternal Grandmother. Each denied knowing how E.D. suffered the injury, but suggested it was the daycare staff. On August 17, the investigators executed a search warrant on the family home, where they found bloodstains on and near M.D.'s crib and secured various biological samples. The only person home for the search was Pascal Nemmar, a family friend and the children's godfather.

¶5        Nemmar lived in New Mexico, but he visited the family "every [three] weeks or so" and stayed for "several days." Mother and Father sometimes left the children alone with Nemmar in both Arizona and

---

[1]        Shea G. is the biological father of M.G. and S.G. The superior court terminated his parental rights and he is not a party to this appeal.

New Mexico. In fact, Nemmar had just returned M.G. and S.G. from New Mexico to Arizona on August 6, the day before E.D.'s injury was discovered. But Mother said Nemmar had no contact with E.D. and "immediately returned" to New Mexico. By December 2018, detectives had arrested Nemmar for possessing child pornography, including images of the Children, which had been uploaded online from Mother and Father's home.

¶6         DCS removed E.D. and her siblings from their parents, placed them with Maternal Grandmother and filed a dependency petition. DCS also implemented an in-home safety plan and designated Maternal Grandmother as the responsible adult. Just days later, DCS removed the children from Grandmother because her actions were "not aligned with the safety plan." DCS also questioned whether Grandmother could protect the children given her loyalties to Mother. DCS vetted several relatives to serve as a kinship placement for the children. After an evidentiary hearing, the court placed the children with M.G. and S.G.'s paternal grandparents.

¶7         In October 2018, DCS moved to terminate Mother's parental rights to the Children and Father's parental rights to E.D. on grounds of abuse or neglect. Over several months in 2019, the superior court held a sixteen-day combined contested dependency and termination hearing. Grandmother testified, but her testimony conflicted with earlier statements to police and DCS, and the court found her testimony was not credible. Grandmother admitted she testified "to defend her daughter."

¶8         The court issued an 85-page ruling terminating Mother's parental rights to E.D. on the grounds alleged. The court found that E.D. "suffered non-accidental, intentional trauma at the hands of one or both of her parents" while in their exclusive care, and that "one or both of the parents neglected [E.D.] by failing to protect [her] after they knew or reasonably should have known [she] had been abused."[2]

¶9         Four months later, Grandmother moved to intervene "for custody and adoption of the minor children." The superior court denied the motion as untimely under Rule 24(b), Ariz. R. Civ. P., because Grandmother waited "over a year and a half" to intervene after parental rights had been terminated. Moreover, the court considered but rejected arguments for intervention under *Bechtel v. Rose*, 150 Ariz. 68 (1986), and

---

[2]    This court affirmed the order terminating Mother and Father's parental rights. *Shea G., Tiffani D., Aaron D. v. Dep't of Child Safety*, No 1 CA-JV 19-0037, 2020 WL 5803356 (App. Sept. 29, 2020) (mem. decision).

found that intervention was not in the Children's best interests: (1) "[a]lthough [Grandmother] had a significant relationship with the Children prior to the dependency, [she] did not act in their best interests when she violated the safety plan," leading to the Children's removal from their parents; and (2) Grandmother "utterly failed to protect the Children" when she gave "blatantly untruthful" testimony "solely . . . to help the parents and not to protect [E.D.] whom one or both had abused."

¶10            Ten months later, Grandmother filed a flurry of motions, including motions for emergency placement, adoption and disclosure, along with a second motion to intervene "for custody and adoption of the minor children."  DCS objected but did not serve Grandmother with its objection.  The superior court heard oral argument on Grandmother's motions for intervention, placement and adoption petition.  It denied Grandmother's second motion to intervene, finding it was "even more untimely than her first" and alleged no new circumstances.  The court held that Grandmother was not a party and thus lacked standing for her emergency placement and disclosure motions.  Nor did Grandmother have DCS's consent to adopt and she could not show good cause to waive that requirement.

¶11            Grandmother timely appealed the denial of her two motions to intervene, motion for emergency placement, motion for disclosure and petition to adopt.  We have jurisdiction.  A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2101(A)(1).

## DISCUSSION

### I.    Motion to Intervene

¶12            Grandmother argues the superior court erroneously denied her second motion for permissive intervention.[3]  We review the court's denial of permissive intervention for an abuse of discretion.  *Dowling v. Stapley*, 221 Ariz. 251, 269-70, ¶ 57 (App. 2009).  The superior court abuses its discretion when its decision is "manifestly unreasonable, exercised on untenable grounds or for untenable reasons."  *Williams v. Williams*, 166 Ariz. 260, 265 (App. 1990).

¶13            For permissive intervention, "the court may permit anyone to intervene who: (A) has a conditional right to intervene under a statute; or

---

[3]     Grandmother also appealed the superior court's denial of her February 2020 motion to intervene, but her notice of appeal was untimely and we dismissed the appeal for lack of jurisdiction.

(B) has a claim or defense that shares with the main action a common question of law or fact." Ariz. R. Civ. P. 24(b)(1). If Rule 24(b) is satisfied, the court may also consider:

> the nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the merits of the case. The court may also consider whether changes have occurred in the litigation so that intervention that was once denied should be reexamined, whether the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

*Bechtel*, 150 Ariz. at 72 (quotation omitted). The movant must show that intervention would be in the Child's best interest. *Id.* at 74.

¶14 The superior court did not abuse its discretion. Grandmother filed her second motion to intervene in January 2021, almost 15 months after the superior court terminated Mother's and Father's parental rights. The court noted that Grandmother's second motion to intervene was "even more untimely than her first motion" and she presented no new facts. Reasonable evidence also shows the Children had been in their current placement for over two years and were thriving with adoption "imminent." Moreover, the court reiterated that intervention was not in the Children's best interests because Grandmother had violated DCS's safety plan and offered "untruthful testimony" at trial "to help the parents and not to protect [E.D.]." Because reasonable evidence supports the court's findings, we will not reweigh the evidence on appeal to reach a different result. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 12 (App. 2002) ("The resolution of [any] conflicts in the evidence is uniquely the province of the juvenile court as the trier of fact; [this Court] do[es] not re-weigh the evidence on review.").

## II. Motions for Emergency Placement and Disclosure

¶15 Because the superior court did not abuse its discretion in denying Grandmother's second motion to intervene, she lacked standing to request emergency placement or disclosure. *See* Ariz. R.P. Juv. Ct. 37(A) (defining "parties" and "participants" in dependency matters); *see also*

*Maricopa Cty. Juv. Action No. JS-7135*, 155 Ariz. 472, 474 (App. 1987) (grandparents who never had legal custody of grandchild were not parties to the termination action).

### III.    Petition to Adopt

**¶16**        Grandmother also challenges the superior court's denial of her petition to adopt, which this court reviews for an abuse of discretion. *David C. v. Alexis S.*, 240 Ariz. 53, 55, ¶ 8 (2012). The superior court is in the best position to weigh the evidence and "we do not re-weigh the evidence on appeal." *Jesus M.*, 203 Ariz. at 282, ¶ 12.

**¶17**        To adopt a child in DCS custody, Arizona law requires written consent from DCS. A.R.S. § 8-109(A)(8). The superior court may waive this requirement if waiver is "clearly in the child[ren]'s best interest[s]."A.R.S. § 8-106(A)(7). Grandmother never secured DCS's consent to adopt the Children, who remained in DCS custody. And the record includes reasonable evidence that waiver of this requirement was not clearly in the Children's best interest. The court did not abuse its discretion.

### IV.    Failure to Serve Objections

**¶18**        Grandmother argues that she was denied a fair hearing because DCS did not serve her with its written objection to her motions. We review questions of law and constitutional claims de novo. *Hobson v. Mid-Century Ins. Co.*, 199 Ariz. 525, 528, ¶ 6 (App. 2001).

**¶19**        Proper notice is a "fundamental element of due process." *Roberto F. v. Ariz. Dep't of Econ. Sec.*, 232 Ariz. 45, 55, ¶ 44 (App. 2013). "To justify the reversal of a case, [however,] there must not only be error, but the error must have been prejudicial to the substantial rights of the party." *Roberto F.*, 232 Ariz. at 50, ¶ 18. "Reversible error will not be presumed, but must be found to exist in the record." *Id.*

**¶20**        Grandmother does not allege she suffered any specific prejudice from the court's consideration of DCS's objections. *See Brenda D. v. Dep't of Child Safety*, 243 Ariz. 437, 448, ¶ 38 (2018) (appellant "must affirmatively prove prejudice" and cannot merely "rely upon speculation"). Nor did the objections raise anything new. DCS just reiterated that (1) the court had denied Grandmother's first motion to intervene; (2) Grandmother asserted no new facts in her second motion; and (3) the court "ha[d] already addressed why [Grandmother] is not an appropriate or safe placement and as such, she should not be considered to adopt the children." Grandmother

did not seek a continuance. Because Grandmother has not shown prejudice, we discern no error.

## CONCLUSION

¶21 We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA